LEVI F. STRAIGHT and Another v. ROBERT C. WIGHT and Another.[1]

April 25, 1895.

No. 9263.

**Guaranty—Consideration.**
> It is not necessary that the written memorandum of a "special promise to answer for the debt of another" should expressly state the consideration for the promise. It is sufficient if, from the whole writing, it appears with reasonable clearness what the consideration was; as, for example, to procure credit for a third party from the promisee.

**Same—Notice of Acceptance and Default.**
> *Held*, also, that the evidence was sufficient to justify findings that notice was given, within a reasonable time, to the guarantor, both of the acceptance of the guaranty and of the default of the principal debtor.

Action in the municipal court of St. Paul. Defendant Wight answered, and the case was tried without a jury, before Twohy, J., who ordered judgment in favor of plaintiffs for $79.98. From an order denying a motion for a new trial defendant Wight appealed. Affirmed.

*Warren H. Mead*, for appellant.

*Johnson W. Straight* and *Leonard A. Straight*, for respondents.

[1] Reported in 63 N. W. 105.

MITCHELL, J.[2]    It appears from the evidence that plaintiffs were retail grocers in the city of St. Paul. Defendant Wight, who also resided in the city, was an acquaintance and customer of plaintiffs. About the middle of July, 1892, Wight gave the defendant Howe, who was a stranger to plaintiffs, a letter, addressed to them, requesting them to open an account with Howe, and sell him what goods he wanted, and that he (Wight) would "see them paid for," or would "guaranty the payment thereof," as differently expressed by the witnesses as to the contents of the letter, which had been lost.    Soon afterwards Howe's wife went to plaintiffs' store to purchase some goods, and presented this letter.    On the faith of this guaranty, plaintiffs opened an account with Howe, and commenced selling him goods on credit, and continued to do so up to the early part of December, 1893.    The aggregate amount of goods sold during this period was about $230, on which Howe from time to time made payments amounting to about $150, leaving a balance due of some $80 when the account closed in December, 1893.    So far as appears, plaintiffs' dealings with Howe constituted one continuous current account.    It also appears that there was no time during the period it was running when there was not a balance due to plaintiffs.    Some time in the fall of 1892—two or three months after the account was opened—Wight inquired of plaintiffs "how Mr. Howe's account stood," or "how he was paying his bills," in response to which they told him "just how he was paying his bills," according to their own testimony, or "all right," according to Wight's testimony.    This was the only communication between the parties, and the only notice given by plaintiffs to Wight, until in February, 1894, when they notified him of Howe's default, and demanded payment of the balance of the account.

From the evidence, as well as from plaintiffs' express admission on the trial, there can be no question but that the undertaking of Wight was a collateral one, and constituted "a special promise to answer for the debt of another"; and the first point made by defendant is that it was void, for the reason that the memorandum (the letter) did not express the consideration for it, as required by the statute of frauds.    The point is not well taken.    It is not necessary

2 Buck, J., absent, took no part.

that the written memorandum should expressly state what the consideration was. It is sufficient if, from the whole writing, it appears with reasonable clearness what was the consideration upon which the undertaking was given. It is entirely plain from this letter that Wight's promise was designed to procure for Howe credit from plaintiffs for goods at their store, and that such credit was the consideration for the promise. Browne, St. Frauds, § 406.

2. It is further contended by defendant that plaintiffs cannot recover on this guaranty, because they never gave him notice of their acceptance of it. We shall assume, most favorably to Wight, that the law is that his letter was a mere offer to guaranty, and did not. constitute a contract until accepted by plaintiffs, and that notice of such acceptance should have been given to him within a reasonable time; also that notice of Howe's default should have been given Wight within a reasonable time after the account closed. The evidence as to the interview between plaintiffs and Wight in the fall of 1892 was, we think, sufficient to justify a finding that Wight was advised then, if not before, that the guaranty had been accepted, and was being acted upon by plaintiffs. Wight's only interest, so far as appears, in the state of Howe's account, was the fact that he had guarantied its payment, and it is a fair inference that his object in making the inquiry was to enable him to take any prudential measures necessary to guard against eventual loss. No particular form of notice is necessary, and it is wholly immaterial whether such notice is given by a guaranty on his own motion, or in response to inquiries by the guarantor.

The findings of the court, which were rather loosely framed, are perhaps broader than the evidence; but this is not important, so long as enough to support the judgment is justified by the evidence. The request to open an account with Howe contemplated a continuing guaranty, indefinite as to both time and amount, subject, doubtless, to the limitation that the account should not be continued for an unreasonable length of time, or for an unreasonable amount. But, subject to this implied limitation, the guaranty clearly implied a credit to Howe on account, from time to time, as he might want goods. Wight never countermanded the guaranty, and when he inquired as to the state of the account he made no suggestion of its being closed; thus impliedly consenting to its continuance. If at

this time he received notice that the guaranty had been accepted, and was being acted on, it was not necessary for plaintiffs afterwards to give him notice of each successive sale as it was made. They had a right to assume, under the circumstances, that the guaranty would continue for a reasonable time, and for a reasonable amount, unless they were sooner notified that it was countermanded. Whether the account was continued for more than a reasonable time, and whether notice of Howe's default was given within a reasonable time after the account was closed, were, at most, questions of fact. Under the circumstances of the case no court could hold as a matter of law that in either case the length of time was unreasonable. On this subject, see Winnebago P. Mills v. Travis, 56 Minn. 480, 58 N. W. 36; Davis v. Wells, 104 U. S. 159; Brandt, Sur. c. 8.

A point is made that the complaint is insufficient because it does not allege notice of acceptance of the guaranty. Without discussing the rule of pleading in such cases, it is sufficient to say that defendant answered, tendering the issue of want of such notice as defensive matter. Under these circumstances the defendant ought not to be permitted to raise such an objection to the complaint made for the first time on the trial of the action.

Order affirmed.