## MIDLAND NATIONAL BANK OF MINNEAPOLIS v. SECURITY ELEVATOR COMPANY AND OTHERS.[1]

November 21, 1924.

No. 24,036.

**In action on note maker and guarantors may be joined as defendants.**

1. The maker and guarantors of promissory notes may be sued in the same action, although the guaranty is by a separate contract, to which the maker is not a party.

**Notice of acceptance to guarantor of future advances unnecessary.**

2. Unless the guarantor, in making an offer of guaranty of future advances, demands notice of acceptance of his undertaking, such notice is unnecessary. In the ordinary case, the extension of credit referred to, of itself, without notice to the guarantor, is acceptance and completes the contract, there being no reason for applying to guaranties any other or different rules than those which govern the making of other contracts.

**Under terms of this guaranty lapse of time will not end it.**

3. Where a guaranty provides that "nothing shall affect" the liability of the guarantors except notice of withdrawal by a guarantor, or the surrender or cancelation of the guaranty by the guarantee, mere lapse of time will not terminate the contract.

**Nor will death of one guarantor release other guarantors.**

4. Neither will the death of one terminate the liability of the surviving guarantors.

**Statute makes notes prima facie evidence of their due execution.**

5. Notes signed for a corporation, "Security Elevator Company, By E. L. Welch, Pres." are, under the statute, section 8448, G. S. 1913, prima facie evidence of their due execution, in the absence of the denial thereof by "oath or affidavit," referred to in the statute.

**Offer to prove want of consideration properly rejected.**

6. The guaranty in question acknowledges as a consideration,

[1]Reported in 200 N. W. 851.

"credit given and to be given." There is no question but that the indebtedness sued for represents a part of the credit referred to. In such a situation, a general offer to prove absence of consideration was properly rejected, and the consideration was sufficiently expressed by the instrument to comply with the statute of frauds.

Action in the district court for Hennepin county against Security Elevator Company and five other defendants to recover $48,634.68. The case was tried before Molyneaux, J. who directed a verdict against defendant Kipp for $57,709.60. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant Kipp appealed. Affirmed.

*Harris Richardson* and *Chester L. Caldwell,* for appellant.

*Allen & Fletcher,* for respondent.

STONE, J.

Action on a guaranty of indebtedness of defendant Security Elevator Company to plaintiff. Defendant Kipp alone appeals from an order denying his motion for judgment notwithstanding the verdict or a new trial, after the direction of a verdict for plaintiff for the full amount claimed.

The indebtedness for which recovery is sought is evidenced by two notes of the elevator company to plaintiff, one of December 22, 1921, for $25,000, another of December 27, 1921, for $25,000. Only small payments have been made so that defendant (appellant Kipp will be so referred to), is liable, if at all, for almost the entire debt. He is not a joint maker or indorser of either of the notes and is under no liability unless it was created and continues by reason of his contract of guaranty.

The contract bears date of April 12, 1916. It had been in existence more than 5 years before the execution of the notes. It is signed by appellant and 4 other individuals, one of whom was Harry F. Weis, now deceased. Its expressed consideration was "credit given and to be given" to the elevator company. The notes indisputably evidence a kind of indebtedness covered by the guaranty which provides that "no extension of the time of payment or

the release or surrender of other security  *  *  *  shall affect the liability" of the guarantors, which was limited to $100,000. The concluding paragraph of the guaranty is as follows:

"I reserve the right to terminate my liability on this guarantee by written notice thereof to the bank, except as to obligations and indebtedness incurred by the debtor prior to such notice; but I agree nothing shall affect my liability on this guarantee except such notice, or the surrender or cancellation of this guarantee by the bank."

The indebtedness and written guaranty were proved, and upon the case so made must stand the directed verdict for plaintiff. It is attacked upon several grounds which will be considered in their order.

1. The argument that the action is upon the notes and not upon the guaranty, and that in consequence there can be no recovery against defendant because he did not sign the notes, is without merit. The complaint declares expressly upon the guaranty. It is immaterial that the maker of the notes is joined as defendant, and recovery sought against it upon the principal obligation. In a case of this kind it is not only proper, it is commendable, to sue both principal debtor and guarantor in the same action. No longer are the delay and expense of two actions necessary where one will do the work. That was established here in Hammel v. Beardsley, 31 Minn. 314, 17 N. W. 858, followed in Lucy v. Williams, 33 Minn. 21, 21 N. W. 849. A more recent decision to the same effect is that in Peoples Cooperative Store v. Blegen, 159 Minn. 158, 198 N. W. 425.

It is wholly immaterial so far as principle is concerned, and we are concerned with principle and not with technicality, that the obligation of principal debtor and guarantor are not expressed by the same instrument. It makes no difference how many separate and differing writings there may be so long as there is identity of obligation. No other result is permitted by our statute, section 7683, G. S. 1913, whereby persons severally liable upon the "same obligation" may be joined in the same action at the option of the

plaintiff. Under section 7916, G. S. 1913, "All parties to a joint obligation, including negotiable paper * * * and all contracts upon which they are liable jointly" may be sued thereon jointly. If judgment goes against all the parties and is paid by a guarantor, he may keep the judgment alive and enforce it against the principal debtor, under section 7915, G. S. 1913. The one action against both principal and guarantor is not only commended by its simple common sense, it is authorized by statute.

The foregoing has to do of course with a guaranty of payment. A guaranty of collection is essentially a different undertaking, the obligation of which requires the creditor to exhaust his remedies against the principal (unless insolvency renders it futile), as a condition precedent to proceeding against the guarantor. Wyman-Partridge & Co. v. Bible, 150 Minn. 26, 184 N. W. 45.

2. Next it is argued that there is no proof that the guaranty ever became effective contractually because there was no showing that plaintiff notified defendant of its acceptance. The language of the instrument is not that of mere offer, but of completed contractual assent. It expresses consideration. It speaks as an effective contract. It considers the liability of the guarantors as already existing. The only notice it requires is one from a guarantor to terminate, rather than one from the guarantee to initiate, the contractual obligation. It is well within the rule of Stone-Ordean-Wells Co. v. Helmer, 142 Minn. 263, 171 N. W. 924. For the reasons there stated, proof of acceptance was not required.

We would be content to let the case, on this point, rest there, but for much distinguished authority which is urged upon us to the contrary. It cannot be ignored. We refer to the many cases which hold that, in case of a guaranty of future advances, notice to the guarantor of the guarantee's acceptance is prerequisite to the completion of the contract. Notable among these decisions are Adams, Cunningham & Co. v. Jones, 12 Pet. 207, 9 L. ed. 1058; Davis v. Wells, 104 U. S. 159, 26 L. ed. 686; and Davis Sewing Machine Co. v. Richards, 115 U. S. 524, 6 Sup. Ct. 173, 29 L. ed. 480. It would be easy perhaps to distinguish this case. But we are met by a

doctrine which we cannot approve, and the candid course is to examine it and state the grounds of our disapproval.

If the instrument before us could be construed as only an offer of guaranty, its language still would compel the conclusion that it was an offer of a promise for an act; that the performance of the act, the extension of credit to the elevator company, alone would have been sufficient acceptance without notice to plaintiff.

We cannot attempt now to analyze the decisions which, in such a case, demand proof of communication of acceptance to the offeror. But is it not clear that such a result ignores the fact, in many of the cases, that the offer of guaranty under consideration did not require a communication of the fact of acceptance to the offeror but, on the other hand, contemplated an acceptance by the mere act of the offeree, the act being the extension of credit referred to in the offer?

The rule, against which we may be deciding this case, received one of its earliest pronouncements by Mr. Justice Story In Adams, Cunningham & Co. v. Jones, 12 Pet. 207, 9 L. ed. 1058. The question presented was whether, upon a letter of guaranty addressed to a particular person, or to persons generally, for a future credit to be given to the party in whose favor it was drawn, notice was necessary to be given to the guarantor that the person giving the credit had accepted or acted upon the guaranty and given the credit on the faith of it. The court was "all of the opinion" that it was necessary.

The holding has been much followed by the Supreme Court of the United States and in many of the states, the cases from which it is not necessary here to cite. (Most of them are referred to in the annotations hereinafter mentioned). We decline to follow because we consider the rule contrary to the simple and elementary proposition of the law of contracts that:

"Where the offer contemplates the performance of or forbearance from an act as the consideration of the promise of the offeror, the performance or forbearance is an acceptance, unless the offeror expressly or impliedly prescribes that the acceptance must be communicated." Clark, Contracts (3d ed.) 27.

A simple illustration is the supposed case of A saying to B: "If you want my horse for $200.00, go to the stable and get him." If, without a word to A, B takes the horse, the contract is complete. In such a case communication of the acceptance to the offeror has never been suggested as prerequisite to the completion of the contract of sale.

The proposition was put thus in Carlill v. Carbolic Smoke Ball Co. 62 L. J. (1893) 257, 263.

"I suppose there can be no doubt that where a person in an offer made by him to another person expressly or impliedly intimates a particular mode of acceptance as sufficient to make the bargain binding, it is only necessary for the other person to whom such offer is made to follow the indicated method of acceptance; and if the person making the offer expressly or impliedly intimates in his offer that it will be sufficient to act on the proposal without communicating an acceptance of it back again to himself, performance of the condition is a sufficient acceptance without notification."

There is no reason why that simple and unexceptionable rule should not apply to the conventional, blanket guaranty frequently given to bankers and merchants. Seldom, if ever, do they require notice of acceptance. The act of extending the credit, standing alone, without notice to the guarantor, is sufficient acceptance of his undertaking. That is so because the offer does not require such notice or anything other than or additional to the act of the creditor in extending credit to the principal debtor as a binding acceptance.

Furthermore, mere notice of the acceptance of the ordinary commercial guaranty would accomplish nothing. This is because the offeror ordinarily, by his offer, indicates that acceptance must be by an act alone as distinguished from an act plus notice of the act. The act required as acceptance is the extension of the contemplated credit. Anything additional, as the guarantee saying to the guarantor "I accept your offer and will extend the credit when it is asked for," is usually nothing more than a courtesy. It does not and cannot complete a contract because the guarantor may withdraw his undertaking up to the amount that credit is extended on

the faith of it. That consideration shows that normally there can be no acceptance save by the act of extending credit. Of course the guarantor, in addition to that act and in order to bind him, may require notice. But he did not do so here, and in the ordinary commercial guaranty such a requirement is lacking—as well from the expression of the writing as from the implication of attending circumstances.

The matter is discussed at length in sections 68 to 70 inclusive, of Williston on Contracts, and there is no successful refutation, if controlling principle is given proper weight, of the statement that:

"It is not true and never has been true as a general proposition that where an offeror requests an act in return for his promise, and the act is performed, that notice to the offeror of the performance is necessary to create a contract. The performance of the act requested furnishes the consideration for the offerer's promise, and is also an overt manifestation of assent. The general rule is that if the offeror wishes notice he must make that a condition of his offer, otherwise he must inform himself whether the act requested has been done."

The same learned author characterizes as "a more accurate explanation of the rule requiring notice," the holding of Bishop v. Eaton, 161 Mass. 496, 37 N. E. 665, 42 Am. St. 437, which as expressed by the syllabus, is as follows:

"Ordinarily there is no occasion to notify a guarantor of the acceptance of an offer of guaranty, for the doing of the act specified in the offer is a sufficient acceptance; but when the guarantor would not know of himself from the nature of the transaction whether the offer had been accepted or not, he is not bound without reasonable notice of the acceptance seasonably given after the performance which constitutes the consideration."

That argument opposes the known and expressed intention of the offeror, as well as the elementary rules concerning offer and acceptance applied to the formation of every other kind of express contract. There is a decided practical objection to a rule requiring

notice of acceptance within a reasonable time after the extension of credit and giving it the effect of a condition subsequent rather than a condition precedent.  At least there is a very practical and seemingly insurmountable obstacle to the application of such a condition to the running guaranties very generally required by banks and merchants, in support of a current, continuing line of credit. It consists of the fact that in far the greater number of such cases the guarantors never have, and never expect to have, any notice that credit has been extended.  They seldom acquire any knowledge one way or the other because the principal debtor meets his obligations and the guarantors are never molested on theirs.  This is the ordinary and always expected outcome of such transactions.

In view of the obvious expectation of the parties that the creditor will make good and the guarantors never be called upon to pay, it is futile to suggest, to say nothing of arguing, that notice of the actual giving of credit is intended as a condition, either precedent or subsequent, to the attaching and enforcement of the liability of the guarantor.

The contrary view, and the one we adopt, complies alike with the expressed intention of the offeror and the ordinary rules of contract law.  It ignores all arbitrary and judge created implications to the contrary, which were so aptly characterized by the late Chief Justice Brown as "but offshoots of judicial tenderness in dealing with the rights and liabilities of sureties."  Stone-Ordean-Wells v. Hilmer, supra [142 Minn. 263, 171 N. W. 924]. It is to the simple effect that communication of the fact of acceptance to the guarantor is not necessary wherever the instrument under consideration, even though it speaks as offer rather than completed contract (surrounding circumstances given all permissible weight), requires the construction, as does the one now before us, that the offeror intended that the act of the offeree, in extending credit to a third person, would be a sufficient acceptance without communication of the fact to the offeror.

In Davis v. Wells, 104 U. S. 159, 26 L. ed. 686, the holding was put upon the ground of the supposed "rule, inhering in the very nature and definition of every contract, which requires the assent

of a party to whom a proposal is made to be signified to the party making it, in order to constitute a binding promise." But it is the rule and always has been that "the assent of a party to whom a proposal is made" need *not* be "signified to the party making it, in order to constitute a binding promise," if the author of the proposal signifies that acceptance may be by an uncommunicated *act* of acceptance.

Under the language of the ordinary guaranty, it is beyond possibility of successful contradiction that the guarantor does not contemplate notice of acceptance of his undertaking. On the contrary, he stipulates with very plain effect that the giving of the credit referred to, standing alone and without notice to him, shall constitute a sufficient acceptance and complete the contract. What right then has a court to burden the transaction with implications to the contrary, and which result in the finding of no contract where the parties intended one?

It is with painful reluctance that, on this question of general import, we cannot adopt the rule of the Supreme Court of the United States. We cannot because we agree with the thought expressed in Powers & Weightman v. Bumcratz, 12 Oh. St. 273, to the effect that, while the uniformity of decision so desirable upon questions of general law can best be achieved in this country by following the lead of the Supreme Court, yet each state court is at liberty to disregard its leadership, for the time being, "when satisfied that a rule has been adopted, as a rule of the common law, as to which there. is, not a conflict among those authorities recognized as evidence of that law, but an absence of authority."

This thought also has the concurrence of the supreme court of Nebraska, for on this question it has said:

"The question here involved is presented to the Court for the first time. A desire to conform our rulings, where the authorities are conflicting, to those of the Supreme Court of the United States, and thus secure uniformity of decisions, inclines us to follow the cases decided by that court. But it is of much greater importance that decisions shall be based upon sound principles and correct law.

The rule as to notice in case of guaranty was unknown to the common law, yet it is sought to engraft it on our jurisprudence as a common law rule—to attach conditions to the contract of guaranty which are not applied to other contracts." Wilcox v. Draper, 12 Neb. 138, 10 N. W. 579, 41 Am. Rep. 763.

It must be recognized that there is no authority for the rule of Davis v. Wells and Davis Sewing Machine Co. v. Richards, supra [115 U. S. 524], outside of the Supreme Court of the United States and those courts which have followed the strikingly original and anomalous rule announced in those decisions. Even in the Supreme Court, the opinion that notice of the acceptance of a guaranty of future advances is necessary to complete the contract seems to have lost ground. In United States F. & G. Co. v. Riefler, 239 U. S. 17, 36 Sup. Ct. 12, 60 L. ed. 121, it was denied effect on a guaranty under seal. "If Riefler and Hall," the opinion states, "had made only a parol offer in the same terms, the company, by becoming surety, would have furnished the consideration that would have converted the offer into a contract, but notice was held necessary in Davis Sewing Machine Co. v. Richards." Scant approval, that, for the cited precedent. Moreover, the opinion concludes in part as follows [page 25]:

"It seems to us that when such a bond, carrying, as a speciality does, its complete obligation with the paper, is put by the obligors into the hands of the obligee and in fact is accepted by it, notice is not necessary that a condition subsequent to the delivery by which the obligee might have made it ineffectual has not been fulfilled. The contract is complete without the notice" [Butler's Case, 3 Coke, 25, 26b; Xenos v. Wickham, L. R. 2 H. L. 296, 36 L. J. C. P. N. S. 313, 16 L. T. N. S. 800, 16 Week, Rep. 38, 13 Eng. Rul. Cas. 422; Pollock, Contr. 8th ed. 7, 8] "and we see no commercial reason why the principles ordinarily governing contracts under seal should not be applied."

The private seal has been abolished in Minnesota. But even though it were still in use, we could "see no commercial reason," nor any other, justifying our applying to the making of a contract

of guaranty the anomalous requirement that, even though the guarantor wills it otherwise, there must be notice of the guarantee's acceptance.

Many of the cases are collected in the footnotes of the discussion by Professor Williston above referred to. See also annotations of Wm. Deering & Co. v. Mortell, 16 L. R. A. (N. S.) 352, and T. and H. Smith & Co. v. Thesmann, 15 Ann. Cas. 1161. In 5 Columbia Law Rev. 215, is a very helpful review of the subject by Mr. W. P. Rogers. His view was (1905) that the "rule requiring notice when the debt is future, as announced by the Supreme Court of the U. S. is losing its hold, at least in the state from which these cases are cited," those states being Ohio, New York, Iowa, Virginia, Indiana, Kansas, Michigan and New Hampshire.

If, perchance, in the states mentioned there are cases the other way, the obvious counter is that the Supreme Court of the United States and those state courts which have followed it, have been exceedingly diligent in limiting the rule requiring notice of acceptance of a guaranty. Even in Davis Sewing Machine Co. v. Richards, supra, the doctrine was restricted by holding that, if a guaranty be given at the request of the guarantee, or express any consideration, "however small," notice of its acceptance is unnecessary. How illogical those exceptions in view of the fact that the request of a guarantee, followed by a proffer of the desired guaranty, standing alone and in their conventional form, never close the contract. They are not legally effective until, the real *act* of acceptance, which is the extension of credit. And even though, in the typical case, a guaranty express consideration, it is open to withdrawal until it has been accepted by the extension of credit in reliance upon it. That is so because the offeror has the right to condition acceptance to suit himself and ordinarily intends, and therefore insists, that there shall be no acceptance, no contract, save by the actual giving of credit on the faith of his guaranty. Of what legal moment, therefore, a prior request of the guarantor, or notice from him, either before or after acceptance?

It must be confessed that our decisions on this question are not in entire harmony. Winnebago Paper Mills v. Travis, 56 Minn.

480, 58 N. W. 36, cannot be reconciled with Stone-Ordean-Wells Co. v. Helmer, supra, to say nothing of our conclusion in the instant case. It was assumed to be the law, but not much approved, in J. R. Watkins Medical Co. v. McCall, 116 Minn. 389, 133 N. W. 966. See also Northern National Bank v. Douglas, 135 Minn. 81, 160 N. W. 193. In this decision we have attempted to apply the elementary principles of offer and acceptance to the making of contracts of guaranty. We perceive no reason why they should not be as controlling there as elsewhere in the law of contract.

In many cases it may be a question whether the initial document is an absolute guaranty or only an offer. If it is the latter, the question may remain whether the offeror has required notice in order to complete acceptance. But wherever it is clear, as it is here and is in the ordinary case, that no such notice has been required by the offeror but that he intends the giving of credit in reliance on his guaranty, standing alone as to him unannounced, to be the binding act of acceptance, there is no room for holding notice necessary. It is too much like judicial alteration of contracts.

3. Next it is argued that the guaranty is not self limited as to time, and in consequence expired after the lapse of a reasonable time, under the rule of such cases as Lehigh Coal & Iron Co. v. Scallen, 61 Minn. 63, 63 N. W. 245. If that rule applies, there must be a new trial. The notes were given 5 years after the guaranty, and it would be a question of fact, at least, whether the lapse of time was reasonable or unreasonable. The answer to this question would depend upon circumstances not now in evidence.

Here also we must hold against defendant as a matter of law, because he is prevented by the language of his own contract from invoking the reasonable time rule. He agreed that nothing should affect his liability as a guarantor except notice by him of the exercise of his right to terminate that liability, or the surrender or cancelation of the contract by plaintiff.

Courts cannot amend the language of a contract in the manner now asked by defendant. To allow his release upon the argument now under consideration, we would have to change the concluding paragraph of the contract by adding thereto a proviso to the effect

that, notwithstanding the previous explicit language to the contrary, the guaranty would expire without notice from the guarantors, and without a surrender or cancelation by plaintiff, upon the lapse of a reasonable time after its execution. The law of contract, upon which more than anything else the structure of modern business depends, does not permit the taking of such a liberty with unambiguous contractual language.

In this case, as already indicated, the guaranty contains an enumeration of methods of termination which is exclusive of those not enumerated. Termination by mere lapse of time obviously must be considered as within the methods intentionally excluded.

4. It is next asserted that the death in 1919, of Mr. Weis, one of the guarantors, followed by the failure of plaintiff to file a contingent claim upon the guaranty against his estate, released defendant. A persuasive argument could be made that an attempt to file a contingent claim might have been futile. Whether it would have accomplished anything depends on circumstances not before us. We have in mind that plaintiff's remedy on the obligation of Mr. Weis probably was by an action against his heirs or the distributees of his estate, under the rule of Hantzch v. Massolt, 61 Minn. 361, 63 N. W. 1069. But this contention also is disposed of by the clear provision of the contract that nothing "shall affect" the liability of the guarantors except "notice, or the surren'der or cancelation of this guarantee by the bank." Compare Beckett & Co. v. Addyman, L. R. 9 Q. B. D. 783, Home Savings Bank v. Hosie, 119 Mich. 116, 77 N. W. 625, and Menard v. Scuddard, 7 La. Ann. 385, 56 Am. Dec. 610.

5. The only proof of the indebtedness consisted of the notes themselves. They were signed "Security Elevator Company, By E. L. Welch, Pres." It is argued for defendant that as against him it was necessary for plaintiff to show that E. L. Welch was duly authorized by the directors to sign them. The record does not contain this proof. In our opinion it was not necessary. Section 8448, G. S. 1913, makes the notes of corporations, as well as those of individuals, appearing on their face to have been duly executed, prima facie proof of due execution, in the absence of

proper denial thereof by "oath or affidavit." National City Bank v. Zimmer V. R. Co. 132 Minn. 211, 156 N. W. 265.

6. Finally, it is argued that the record is without proof of consideration for the guaranty, and that it is unenforceable under the statute of frauds because it does not adequately express the consideration. Defendant's offer to prove no consideration was rejected. The ruling was right because it appeared conclusively that the expected credit had been extended and that the resulting indebtedness continued, and though past due had not been paid. As long as that much remains undenied, as it does, mere general offers to prove no consideration accomplish nothing.

It is unimportant that there may have been no personal benefit to defendant. The consideration was the detriment suffered by plaintiff in extending credit to the elevator company. So long as there is no suggestion that credit was not extended and that the resulting indebtedness is not a continuing obligation of the principal debtor, it is idle to talk about absence of consideration. The same argument, plus the express reference in the contract itself to the consideration therefor as "credit given and to be given," refutes the contention that the writing does not express the consideration in sufficient compliance with the statute of frauds. D. M. Osborne & Co. v. Baker, 34 Minn. 307, 25 N. W. 606, 57 Am. Rep. 55; D. M. Osborne & Co. v. Gullikson, 64 Minn. 218, 66 N. W. 965; Straight v. Wight, 60 Minn. 515, 63 N. W. 105.

Order affirmed.

HOLT, J., took no part.