James GULDEN and Carol Gulden,
Plaintiffs and Appellees,

v.

Gary D. SLOAN and Rebecca Sloan,
Defendants and Appellants.

Civ. No. 10004.

Supreme Court of North Dakota.

Oct. 28, 1981.

Benjamin C. Pulkrabek, Mandan, for plaintiffs and appellees; argued by Benjamin C. Pulkrabek, Mandan.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for defendants and appellants; argued by Orell D. Schmitz, Bismarck.

ERICKSTAD, Chief Justice.

This is an appeal from a judgment against Gary D. Sloan and Rebecca Sloan (Sloans) in favor of James Gulden and Carol Gulden (Guldens) rendered in the District Court of Burleigh County. The judgment resulted from an action brought by Guldens to enforce an oral contract involving a house located in Imperial Valley, a subdivision of Bismarck. We affirm.

The Guldens leased the Imperial Valley house from Walter Krueger in February of 1979. Under the terms of the written lease agreement, Guldens were required to make a rental payment of $414 from February 10, 1979, to March 1, 1979, and then regular monthly payments of $622 until the lease expired on December 31, 1979. The provisions of the lease also gave the Guldens an option to purchase the property during the lease period. The purchase price was set at $62,400, and Guldens were to be credited for any loan equity which accrued during the tenancy. The payments of the principal were to be credited toward the purchase price if the option were exercised.

Guldens made regular monthly payments to Krueger until November of 1979 when, because of James Gulden's unemployment, they were unable to pay during November and December. Because of their financial difficulties, the Guldens talked to Krueger regarding their obligations under the lease. They testified that Krueger told them that if they could find a purchaser for the property, he would allow the property to be sold for the price agreed upon in the lease agreement and that they could keep whatever amount exceeded that purchase price because he considered the excess over $62,400 to be the equity acquired by Guldens during their tenancy.

The Guldens continued to occupy the residence in December, 1979. The Sloans, meanwhile, owned and lived in a mobile home. In the latter part of that month, James Gulden and Gary Sloan, who had known each other for 30 years, had a discussion in which Gulden advised Sloan that he was interested in selling the Imperial Valley house. Sloan told Gulden that he was looking for a home, and based on this conversation it was decided that the Sloans should go out to the Guldens' house to look at it.

The Sloans did visit Guldens' home in Imperial Valley and after some discussion Guldens offered to forgo their option if the Sloans would purchase the house. It is at this point that the two parties disagree. The Guldens contend that an oral agreement was reached that night under which the Sloans agreed to buy the Imperial Valley house. The sale price of the house,

according to the Guldens, was to be $68,400, the additional $6,000 above the option purchase price was to be the Guldens' equity acquired during their lease tenancy. The consideration between the parties was that the Guldens would abandon their option to purchase the house; and, in turn, Sloans would transfer title to their mobile home to the Guldens free of encumbrances. The Sloans would then purchase the Imperial Valley house from Krueger at a price of $62,400, which was the price set in the Guldens' option.

The Sloans, while agreeing that terms of a sales agreement were discussed, contend that no formal agreement was reached during their discussions with the Guldens. They contend that after the Guldens informed them that the owner of the Imperial Valley house was Walter Krueger, they dealt exclusively with Mr. Krueger.

An earnest money agreement was executed on December 31, 1979, between Krueger and Sloans in which the Sloans agreed to purchase the Imperial Valley house for a price of $61,556.62. Possession of the premises was to be delivered to the Sloans on or before February 1, 1980.

On about February 1, 1980, the Sloans moved into the house in Imperial Valley and Guldens moved into the mobile home formerly occupied by the Sloans. The couples helped each other move and exchanged keys. At the trial, Carol Gulden testified that she had talked to Gary Sloan by telephone after she and her husband had moved into the mobile home, and that Mr. Sloan informed her that he was going to pay off the mobile home with his income tax refund, at which time he would give Guldens the title to it. When Sloans did not give Guldens title to the mobile home, the Guldens commenced an action for specific performance, requesting an order requiring that title to the mobile home be transferred to them pursuant to the oral agreement. Before completion of the trial, the Sloans transferred the mobile home to others making specific performance impossible. The trial court ordered judgment in the amount of $6,000 to the Guldens.

Three issues are presented on this appeal:

1. Was the trial court's finding of fact that the plaintiffs acquired $6,000 in equity during the lease of the house in Imperial Valley "clearly erroneous"?

2. Was the trial court's conclusion of law that the parties entered into an oral agreement for good and valuable consideration correct?

3. Was the trial court's finding of fact that the oral agreement had been partially performed "clearly erroneous"?

In reviewing the trial court's finding that the Guldens acquired $6,000 in equity, we apply the "clearly erroneous" rule of Rule 52(a) of the North Dakota Rules of Civil Procedure. That rule provides in relevant part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Recently, in *Hoge v. Burleigh County Water Management District,* 311 N.W.2d 23 (N.D.) (Civil No. 9948, filed October 9, 1981), we discussed the weight given to the trial court's findings of fact as follows:

"The trial court's findings are to be given the same weight as a jury verdict and, in reviewing those findings, the evidence must be viewed in a light most favorable to the findings. On appeal it is not the function of this court to substitute its judgment for that of the trial court. We must give due regard to the opportunity of the trial court to judge the credibility of witnesses, and, unless clearly erroneous, the findings of fact of the trial court, sitting without a jury, are binding upon appeal. Questions of fact decided by the trial court upon conflicting evidence are not subject to reexamination by this court. The mere fact that we might have viewed the facts differently if we had been the initial trier of the case does not entitle us to reverse the lower court." [Citations omitted.] *Hoge v. Burleigh County Water Management District,* 311 N.W.2d 23 at 28 (N.D.1981).

After examining the evidence, we conclude that the trial court's finding that Guldens acquired $6,000 in equity during their tenancy of the Imperial Valley house was not "clearly erroneous". That finding is supported by testimony by Krueger and the Guldens. That testimony indicates that Krueger promised Guldens they could arrange for the sale of the Imperial Valley house and that they could keep any money received in excess of $62,400. That excess, he said, would be considered their equity in the house. Although Guldens didn't make sufficient payments during their tenancy to acquire $6,000 in equity, we believe it is reasonable to conclude that the equity Krueger spoke of was the result of inflation.

As a result, James Gulden looked for a buyer. He found a buyer in December of 1979 when he talked to Gary Sloan. The Guldens testified that they agreed with Sloans to forgo their option to purchase the Imperial Valley house if Sloans would pay $68,400 for the house. That such an agreement was made is further supported by the testimony of Krueger's attorney, Russell Myhre. He testified that there was discussion regarding the figure of $68,400 at his office, in the presence of Krueger and Gary Sloan, at the time the earnest money contract was signed. That testimony, the testimony by Krueger and James Gulden regarding their agreement for selling the Imperial Valley house, and the testimony by Guldens about their agreement with Sloans supports the trial court's finding that the Guldens had acquired $6,000 in equity.

The Sloans next contend the district court's conclusion that the parties entered into an oral agreement for good and valuable consideration is error. Here, they make two arguments. They first argue that the evidence is insufficient to show the requisite consent for formation of a contract. Secondly, they argue that the oral agreement is unenforceable because the consideration was insufficient.

The consent of the parties is essential to the existence of a contract. § 9–01–02, N.D.C.C. The determination as to whether or not an agreement meets the criteria necessary to be declared a valid contract is a legal one made by the court and is thus fully reviewable. *Gerhardt Const. Co. v. Wachter Real Estate Trust*, 306 N.W.2d 223, 226 (N.D.1981); *Kuhn v. Kuhn*, 281 N.W.2d 230, 235 (N.D.1979); *Hultberg v. City of Garrison*, 79 N.D. 356, 56 N.W.2d 319, 321 (1953).

Although determining the issue of whether or not the required mutual consent existed results in a legal conclusion, determining the existence of mutual consent necessarily involves factual questions.

Section 9–03–01, N.D.C.C., provides that the consent of the parties to a contract must be free, mutual, and communicated by each to the other. In deciding whether or not the parties consented to entering into a contract we must look to the actions of the parties at the time, and after the agreement was made. To do so, we must rely on the evidence and the trial court's findings of fact. In reviewing the trial court's finding of fact, we apply the "clearly erroneous" rule of 52(a), N.D.R.Civ.P.

The trial court found that Sloans and Guldens "made an oral agreement". Implicit in that statement is a finding by the trial court that the parties consented to the terms of the agreement. That finding is supported by the testimony regarding discussions between Gary Sloan and James Gulden. The trial court viewed the witnesses as they testified, and was able to judge their credibility. It is the trial court's function to decide the facts based on the testimony and its observations of the witnesses. The trial court is to discern the truth at the trial. We will not substitute our judgment for that of the trial court when there is testimony to support its finding. *Rolfstad v. Hanson*, 221 N.W.2d 734, 737 (N.D.1974). Because the record supports the trial court's finding that Sloans and Guldens "made an oral agreement", we conclude that the required mutual consent existed.

The Sloans' second argument under this contention is that their oral agree-

ment with Guldens is unenforceable because the consideration was insufficient. Sufficiency of consideration is a question of law. *Gerhardt Const. Co. v. Wachter Real Estate Trust*, 306 N.W.2d 223, 226 (N.D. 1981); *Kuhn v. Kuhn*, 281 N.W.2d 230, 235 (N.D.1979); *Hultberg v. City of Garrison*, 79 N.D. 356, 56 N.W.2d 319, 321 (1953). Questions of law are reviewable anew on appeal to this court. *Hager v. Devils Lake Public School District*, 301 N.W.2d 630, 633 (N.D.1981).

The trial court, in its memorandum opinion, found that the consideration for the agreement between the parties was the Guldens' abandonment of their option to purchase the Imperial Valley house. The Sloans agree that forebearance of a privilege or abandonment of a privilege may be sufficient consideration in certain instances, however, they argue that in this case, the Guldens' option had no legal value because Guldens were financially unable to exercise it and it was therefore insufficient consideration.

■ The trial court correctly held that the Guldens' option to purchase the home was a valuable right, and, because it is specifically enforceable, the forebearance of that right constitutes sufficient consideration to create a contract between the parties.

■ The North Dakota Century Code provides that "good consideration" may be any benefit conferred or detriment suffered. § 9–05–01, N.D.C.C. Both benefit and detriment have technical meaning and neither the benefit to the promissor nor detriment to the promissee need be actual. 1 Williston on Contracts, 3rd Ed. § 102A. Detriment, as used in testing the sufficiency of consideration, means legal detriment as distinguished from detriment in fact. "It means giving up something which immediately prior thereto the promissee was privileged to retain, or doing or refraining from doing something which he was then privileged not to do, or not to refrain from doing." *Id.*

This court in *Divide County v. Citizens State Bank of Ambrose*, 52 N.D. 29, 30, 201 N.W. 693, 693–94 (1924), held that a promise to release a seed lien is good consideration for a promise to pay money, even though the lien was subsequent to another lien which would exhaust the value of the land. After noting the argument that the county gave up nothing of value, this court stated:

"It is elementary that a promise is a good consideration for a promise, even though the thing that is promised may be of no real benefit to the promiser. It is sufficient if it be a detriment to the promisee, and a detriment in this connection may consist in changing or agreeing to change or relinquish one's legal right *regardless of the value of that right.*" [Emphasis added.] 201 N.W. at 694.

This court followed that rule in *Keen v. Larson*, 132 N.W.2d 350, 357 (N.D.1964), holding that a compromise of a bona fide controversy constitutes a good consideration for a promise, regardless of allegations that the claim was doubtful. This court said:

"A legal detriment may be sustained by a promisee by the surrender of a legal right, whether such right has substantial value or not." [Citation omitted.] *Id.*

In the instant case, Guldens held an option to purchase the Imperial Valley house through December 31, 1979. They were not required to forgo the exercise of that option but, because they had a legal right to exercise the option until December 31, 1979, we hold that forebearance of the exercise of that option is good consideration regardless of its value.

Finally, Sloans contend that the trial court committed reversible error in finding as a matter of law that the oral agreement had been partially performed. While they do not specifically assert that the oral contract between themselves and Guldens violated the statute of frauds, it appears implicit in their final assertion that they are claiming a statute of frauds defense.

In analyzing the statute of frauds defense, it should be noted that the North Dakota Century Code contains three sepa-

rate statutes of frauds. Section 9–06–04, N.D.C.C., ("an agreement for the leasing for a longer period than one year, or for the sale, of real property . . . ."); Section 41–01–16, N.D.C.C., ("a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some writing . . . ."); Section 41–02–08, N.D.C.C., ("the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing . . . .").

We do not address the issue of which of the three statutes of frauds is applicable to this case because this issue has not been argued or briefed. We shall assume for purposes of discussion that at least one is applicable.

Applying the statute of frauds, the part performance of the oral contract by Guldens exempts it from the statute of frauds. In *Buettner v. Nostdahl*, 204 N.W.2d 187, 195 (N.D.1973), this court quoted with approval the following statement from *Miller v. McCamish*, 78 Wash.2d 821, 828–29, 479 P.2d 919, 923–24 (1971):

" 'As evidenced by the test required in this state to successfully assert part performance, the court's overriding concern *is precisely directed toward and concerned with a quantum of proof certain enough to remove doubts as to the parties' oral agreement*:

' "The first requirement of the doctrine that part performance of an oral contract exempts it from the provisions of the statute of frauds is that the contract be proven by evidence that is clear and unequivocal and which leaves no doubt as to the terms, character, and existence of the contract. * * *

' "A mere preponderance of the evidence is not sufficient. If the evidence leaves it at all doubtful as to whether or not a contract was entered into, the court will not decree specific performance. * * *

\* \* \* \* \* \*

' "Another requirement of the doctrine * * * is that the acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement. If they point to some other relationship, such as that of landlord and tenant, or may be accounted for on some other hypothesis, they are not sufficient. * * *" ' *Granquist v. McKean*, 29 Wash.2d 440, 445, 187 P.2d 623, 626 (1947).' " *Buettner v. Nostdahl*, 204 N.W.2d at 195.

In *Buettner*, the plaintiff commenced an action alleging the existence of an oral contract. Under the terms of the alleged contract the defendant was to help the plaintiff get into the cattle-feeding business by providing him with sugar beet tops and the use of a 40-acre lot. The plaintiff contended that he relied on representations made by the defendant and performed his part of the contract obligations by moving his family and working for the defendant. We held that the performance by the plaintiff did not take the oral contract out of the statute of frauds because that performance was explicable as an employment relationship. We stated:

"If the statute of frauds is to continue to have any meaning in our State, it would seem that it should apply in the instant case where the provisions of the alleged oral contract are so incredible. We do not think it reasonable that an experienced businessman would obligate himself individually or as a member of a partnership to the financial extent herein contended necessary for the construction of the cattle-feeding facilities unless he or the partnership were to participate substantially in the expected profits." 204 N.W.2d at 195.

In *Vasichek v. Thorsen*, 271 N.W.2d 555, 560–61 (N.D.1978), we held that the part performance in the form of improvements to property was sufficient to take the oral contract for the sale of land out of the statute of frauds. We said:

"Although any one of these acts, considered separately, may not overcome the statute, taken as a whole they are consistent with the existence of a sales contract." 271 N.W.2d at 561.

In the instant case, therefore, we must look to all of the facts which point to part performance of the oral agreement and determine whether or not they can be explained by some relationship other than the alleged contractual relationship.

■ We hold that the performance in the instant case does except the oral contract from the statute of frauds. It is undisputed that Sloans moved out of their mobile home and into the Imperial Valley house. At the same time, Guldens moved out of the Imperial Valley house and into the mobile home. The parties helped each other move and exchanged keys. These actions are consistent with the trial court's finding that the parties entered into an oral agreement.

The Sloans only explanation for the performance of the terms of the contract is their friendship with Guldens. They contend that Guldens had nowhere to live so they offered their mobile home. Guldens did not, however, pay rent.

Although Sloans contend they were motivated solely by their friendship with Guldens, the testimony does not support that contention. The testimony, instead, is consistent with the finding that an oral contract existed. Guldens testified that they had contracted for ownership of the mobile home and that Gary Sloan was to have the title to it transferred to them. Consistent with their belief that they owned the mobile home, the Guldens did not pay rent for living in it. Further, the testimony indicates that Guldens received continued assurances from Gary Sloan that he would pay off "some money owing on the trailer" and have the title to it transferred to them.

The friendship which Sloans assert as the reason for allowing Guldens to live in the mobile home was termed by Sloans' attorney on cross examination of James Gulden as "acquaintances". Gary Sloan himself, on direct examination, described his relationship with Guldens as follows:

"Q. Okay. Had you in the past socialized with [Guldens]?

"A. Well, at times, yes. Once or twice, you know, I'd run into them."

Although it is undisputed that James Gulden and Gary Sloan had known each other for 30 years, it doesn't appear that their friendship was so strong and long lasting that it explains Sloans letting Guldens live rent free in their mobile home. That explanation is not so likely that it precludes our holding that part performance exempted the oral contract from the statute of frauds.

We believe that the facts of this case are distinguishable from *Buettner*. In the instant case, the facts taken as a whole are consistent with the existence of a contract. The simple explanation that the exchange was made out of friendship does not, in view of the testimony, provide an acceptable explanation of the exchange. We therefore hold that the oral contract between Sloans and Guldens was excepted from the statute of frauds because of the part performance.

Affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.