Tufte, Justice.
[¶ 1] Karna Kornkven, Eric Molbert, and Kristi Benz ("Siblings") appeal after the district court entered judgment in favor of their brother, Lauris Molbert. The court concluded that under a stock purchase agreement, Molbert had the right to purchase the Siblings' shares of stock in a bank holding company at book value. We affirm.
I
[¶ 2] According to the undisputed facts, the parties' father, Ralph Molbert, owned the controlling interest in the Bank of Steele and its holding company, H.O.M.E., Inc. Lauris Molbert, the oldest child, became a director of the bank in 1983 and director of the holding company in 1986 and was actively involved in the operations of both entities.
[¶ 3] Ralph and Beverly Molbert intended for Lauris Molbert to own and control the bank and holding company and pursued this intention through their estate plan. In December 1992, Ralph and Beverly Molbert gifted their children shares of H.O.M.E. stock and recorded the gift for tax purposes in 1992. It was understood that Ralph and Beverly Molbert intended to restrict these gifted shares.
[¶ 4] Following the gift of H.O.M.E. shares to the Molbert children, H.O.M.E. board minutes signed by Ralph and Beverly Molbert described the development of a shareholder agreement to restrict the gifted shares. In July 1993, the parties discussed the agreement while on a family vacation to Whitefish, Montana. The parties executed the stock purchase agreement following the Whitefish vacation. Ralph Molbert signed the agreement as H.O.M.E. president. Share certificates were issued after execution of the agreement stating the gifted shares were restricted by the stock purchase agreement.
[¶ 5] The stock purchase agreement indicated a purpose of the agreement was "to *891 provide for the transition of ownership of the Shares to Shareholder L. Molbert and to accomplish these objectives [the Shareholders] have agreed to the following restrictions and options concerning ownership and purchase of the Shares." The agreement granted Lauris Molbert the right to vote the Siblings' shares. Paragraph Seven of the agreement also granted him the irrevocable right to purchase the Siblings' shares at book value:
7. Right to Call Shares. The Shareholders agree that it is in the best interest of the Corporation and its Shareholders if Shareholder L. Molbert has the irrevocable right to purchase the Shares of one or all of the Shareholders. Accordingly, notwithstanding anything to the contrary contained in this Agreement, the Shareholders hereby grant to Shareholder L. Molbert the irrevocable right and option to require any one or more of the Shareholders to sell to him all of his or her Shares at the Purchase Price under paragraph 8 of this Agreement and on the terms as provided under paragraph 9 of this Agreement at anytime during a Call Period, as defined below. Shareholder L. Molbert may exercise his right under this paragraph by providing written notice given to the Shareholder whose Shares are to be purchased. Upon written notice, the purchase of the Shares shall be completed in accordance with paragraph 9 of this Agreement within 30 days following the date of the written notice. For purposes of this paragraph, the "Call Period" shall be the first 60 days after the end of each fiscal year of the Corporation. The right to call the Shares granted to Shareholder L. Molbert under this paragraph shall expire if not executed within 180 days following the death of Ralph N. Molbert or Beverly J. Molbert, whichever should last occur.
Under the agreement, " 'Purchase Price' shall consist of the Book Value of the Shares to be sold, plus repayment of any Net Shareholder Loans, if any." Paragraph Seven of the agreement was amended in 1997 to extend the expiration of the call right from 180 days to 360 days. All of the parties executed the 1997 amended agreement.
[¶ 6] After arranging for Lauris Molbert to control and eventually own H.O.M.E. through the 1993 stock purchase agreement, Ralph and Beverly Molbert took out a $500,000 life insurance policy naming the Siblings as beneficiaries. They also provided additional unrestricted stock shares and benefits to the Siblings through their estate plan.
[¶ 7] In February 2015, Lauris Molbert sent written notice to the Siblings that he was exercising the call option set forth in Paragraph Seven of the stock purchase agreement. The Siblings refused to transfer their shares. Molbert sued the Siblings for specific performance, seeking a judgment requiring them to sell their shares to him in exchange for the book value payment.
[¶ 8] The Siblings counterclaimed, alleging the stock purchase agreement was void because Lauris Molbert engaged in fraud by failing to disclose that the agreement granted him a purchase option at book value. The Siblings also alleged the agreement lacked consideration and Molbert breached fiduciary duties owed to them. The Siblings sought relief in the form of cancellation of the agreement.
[¶ 9] Both parties moved for summary judgment. The district court dismissed the Siblings' counterclaims, concluding the stock purchase agreement unambiguously allowed Lauris Molbert to purchase the Siblings' stock shares at book value. The court concluded the agreement was supported by ample consideration. The court *892 also concluded there was no evidence Lauris Molbert committed fraud or breached fiduciary duties. The court declared the stock purchase agreement fully enforceable and ordered the transfer of the Siblings' stock to Lauris Molbert for a book value payment of $2,329,420.35.
II
[¶ 10] This Court's standard for reviewing summary judgments is well-established:
Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.
Sorenson v. Bakken Invs., LLC , 2017 ND 127, ¶ 6, 895 N.W.2d 302 (quoting Hamilton v. Woll , 2012 ND 238, ¶ 9, 823 N.W.2d 754 ).
[¶ 11] "When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide." A.R. Audit Servs., Inc. v. Tuttle , 2017 ND 68, ¶ 5, 891 N.W.2d 757. Although actions involving fraud are not commonly suited for disposition by summary judgment, if a party fails to support his or her opposition to summary judgment with sufficient facts to show there is a genuine issue for trial, then, even in these cases, summary judgment is appropriate. Dahl v. Messmer , 2006 ND 166, ¶ 8, 719 N.W.2d 341 (citing Kary v. Prudential Ins. Co. of Am. , 541 N.W.2d 703, 706 (N.D. 1996) ).
III
[¶ 12] The Siblings argue the district court erred in granting Lauris Molbert specific performance requiring them to sell their stock shares to him at book value. They argue the specific performance statute prohibits relief in Molbert's favor.
[¶ 13] Section 32-04-13, N.D.C.C., governs specific performance:
Specific performance cannot be enforced against a party to a contract in any of the following cases:
1. If the party has not received an adequate consideration for the contract.
2. If it is not as to that party just and reasonable.
3. If such party's assent was obtained by misrepresentation, concealment, circumvention, or unfair practice of any party to whom performance would become due under the contract, or by any promise of such party which has not been substantially fulfilled.
4. If the party's assent was given under the influence of mistake, misapprehension, or surprise, except that when the contract provides for compensation in case of mistake, a mistake *893 within the scope of such provision may be compensated for and the contract specifically enforced in other respects, if proper to be so enforced.
[¶ 14] The Siblings argue that because the district court failed to address the factors outlined in N.D.C.C. § 32-04-13, it erred in granting Lauris Molbert specific performance. The Siblings argue the agreement is not supported by adequate consideration. They also allege Lauris Molbert engaged in fraud by failing to disclose material facts relating to the agreement and breached fiduciary duties.
A
[¶ 15] Good consideration for a contract is any benefit conferred or detriment suffered. Harrington v. Harrington , 365 N.W.2d 552, 555 (N.D. 1985) ; N.D.C.C. § 9-05-01. "A written instrument is presumptive evidence of a consideration." N.D.C.C. § 9-05-10. If consideration exists, courts will generally not inquire into the adequacy of the consideration; however, when specific performance is requested under N.D.C.C. § 32-04-13, a court may inquire into the adequacy of the consideration. Harrington , at 555 n.2. Mere inadequacy of consideration does not justify a denial of specific performance unless the inadequacy demonstrates a gross imposition, undue influence, or shocks the conscience. Id. at 558. "The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." N.D.C.C. § 9-05-11. "Sufficiency of consideration is a question of law." Gulden v. Sloan , 311 N.W.2d 568, 572 (N.D. 1981).
[¶ 16] The district court concluded the stock purchase agreement was supported by adequate consideration:
Consideration is expressly acknowledged in the 1993 Agreement. That creates a statutory presumption of consideration. N.D.C.C. § 9-05-10. All parties agreed to numerous rights and obligations. Among other things, Lauris Molbert agreed that the shares he owned were restricted and were subject to a right of first refusal by first H.O.M.E. and then the Defendants. That right of first refusal is at the lower of book value or the price offered by a third-party. The parties agreed to numerous other rights and obligations throughout the agreement.
Consideration was also found outside the four corners of the contract. Lauris Molbert and H.O.M.E., as parties to the contract, relied upon its provisions in forbearing from other actions that would have provided Lauris Molbert with ownership and control of the Bank. The 1993 Agreement was also part of the detailed estate plan put together by Ralph and Beverly Molbert. They too forbore from taking other steps that could have provided ownership and control to Lauris Molbert. All three also forbore from taking alternative steps to insure Lauris Molbert's long-term involvement with H.O.M.E. and the Bank.
Accordingly, the Defendants received substantial benefits from the gift and the agreement. Other parties and third-parties forbore from exercising other options available to them, that would have been detrimental to the Defendants. The Defendants' core contention that they could have accepted the gift of H.O.M.E. shares, and then refused to sign the 1993 Agreement, without Lauris Molbert, H.O.M.E., and Ralph and Beverly Molbert taking alternative actions to protect their goals and interests is not supported by the undisputed facts.
[¶ 17] We agree with the district court's analysis. The written stock purchase agreement was presumptive evidence of *894 consideration. See N.D.C.C. § 9-05-10. Additionally, Molbert's H.O.M.E. shares were restricted by a right of first refusal at the lower of book value or the price offered by a third party. The court did not err in concluding the stock purchase agreement was supported by adequate consideration.
B
[¶ 18] The Siblings alleged Lauris Molbert engaged in fraud by failing to advise them that the stock purchase agreement provided him a call option to purchase their stock shares at book value. This Court has explained the application of actual or constructive fraud necessary to invalidate a contract:
Persons alleging actual or constructive fraud seek to invalidate contracts by arguing consent was not freely obtained. See N.D.C.C. § 9-03-01(1) (parties' consent to a contract must be free); § 9-03-03(3) (consent is not free when obtained through fraud); § 9-03-07 ("Fraud is either actual or constructive."). The most significant difference between the two claims is that actual fraud requires proof of an intent to deceive, while constructive fraud requires no proof of such intent. N.D.C.C. §§ 9-03-08 and 9-03-09(1). Although actual and constructive fraud both invalidate a party's apparently free consent to a contract, the two types of fraud differ in the source of injury they address. Actual fraud confronts situations where one party intentionally misrepresents or conceals facts from another contracting party. N.D.C.C. § 9-03-08. Constructive fraud confronts situations where the source of the claimant's injury is the breach of an existing duty between the contracting parties. N.D.C.C. § 9-03-09(1).
American Bank Center v. Wiest , 2010 ND 251, ¶ 10, 793 N.W.2d 172 (quoting Erickson v. Erickson , 2010 ND 86, ¶ 8, 782 N.W.2d 346 ). To establish fraud, the complaining party must prove its reliance on false or misleading representations made by another party. Dahl , 2006 ND 166, ¶ 8, 719 N.W.2d 341.
[¶ 19] The district court concluded the Siblings' fraud claim failed as a matter of law:
Here, none of the Defendants claim that Lauris Molbert made false or misleading statements regarding the existence of the call provision, or the effect of the call provision. To the contrary, the Defendants have limited recollections regarding the meeting in Whitefish, Montana, in July 1993. Each of the Defendants are capable of reading and understanding the call or purchase provisions. Absent an affirmative misrepresentation, any claim or defense based upon fraud or deceit fails.
Claims of fraud or deceit also fail where the matter in question was plainly set forth in writings signed by and available to the party. Prod. Credit Ass'n of Minot v. Geving , 218 N.W.2d 185, 195 (N.D. 1974) (holding claims of fraud failed where both parties read and signed a loan settlement agreement). That is certainly the case here.
....
The gravamen of a claim for constructive fraud is that one party had a duty to disclose information to the other party and failed to do so. As just discussed, Lauris Molbert simply owed the Defendants a duty of loyalty and full disclosure. Lauris Molbert did not fail to disclose anything at all. The 1993 Agreement plainly sets forth the call provision and the book value purchase price now at issue. Richard Kornkven read and readily understood the provisions in 1993. The Defendants concede they could have done so.
*895 The Defendants were expressly advised regarding the call and valuation provisions by correspondence in 1997 and again in 2009. They signed agreements in 1997, 2009, and 2012 ratifying the 1993 Agreement.... [T]he Defendants here are not excused from reading the documents provided to them and the contracts they signed by simply claiming a fiduciary duty.
[¶ 20] The Siblings claimed Lauris Molbert breached fiduciary duties. "Shareholders of close corporations owe one another a duty of utmost loyalty and good faith." Kortum v. Johnson , 2008 ND 154, ¶ 27, 755 N.W.2d 432. "[A]ll shareholders in a closely held corporation owe one another" a duty "to act in an honest, fair, and reasonable manner." Id. at ¶ 26 (quoting N.D.C.C. § 10-19.1-115(5) ).
[¶ 21] The district court concluded Lauris Molbert did not breach any fiduciary duties:
Lauris Molbert does hold a role as a shareholder, and shareholders have a general duty of loyalty to co-shareholders. However, no breach of that duty occurred here. The 1993 Agreement plainly sets forth the call provision and the book value purchase price now at issue. To the extent that Lauris was required to disclose the terms of the Agreement to the other siblings, the undisputed facts in the record indicate that each sibling was provided with several copies of the Agreement and amendments at issue throughout the years, and [had] ample opportunity to read them or seek further advice.
[¶ 22] The stock purchase agreement plainly and unambiguously provides Lauris Molbert the right to purchase the Siblings' shares at book value. See N.D.C.C. § 9-07-02 ("The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity."). The Siblings had sufficient time to read and consider the agreement. "Failure to read a document before signing does not excuse ignorance of its contents unless the party shows that he was prevented from reading it by fraud, artifice, or design by the other party or his authorized representative." David v. Merrill Lynch, Pierce, Fenner and Smith, Inc. , 440 N.W.2d 269, 273-74 (N.D. 1989) (citations and internal quotation marks omitted). The Siblings presented no evidence on which the court could find Lauris Molbert engaged in fraud or acted in a dishonest, unfair, or unreasonable manner relating to the execution of the stock purchase agreement.
[¶ 23] The Siblings argue that because the district court failed to expressly apply N.D.C.C. § 32-04-13, it erred in granting Lauris Molbert specific performance. We disagree. Although the court did not cite N.D.C.C. § 32-04-13 in its decision, it discussed the four cases in which the statute bars specific performance when it analyzed the undisputed facts relating to the stock purchase agreement. The court concluded there was adequate consideration. The court also concluded Molbert did not engage in fraud or misrepresentation or act unreasonable. On the basis of the undisputed facts, we conclude the court did not err in granting Molbert specific performance and ordering the Siblings to sell their stock shares to Molbert at book value.
IV
[¶ 24] We do not address the Siblings' other arguments because they are unnecessary to the decision or are without merit. The judgment is affirmed.
[¶ 25] Jerod E. Tufte
Lisa Fair McEvers
Jon J. Jensen
Benny A. Graff, S.J.
Gerald W. VandeWalle, C.J.
*896 [¶ 26] The Honorable Benny A. Graff, Surrogate Judge, sitting in place of Crothers, J., disqualified.