## SOUTHDALE CENTER, INC. v. DOROTHY LEWIS.

110 N. W. (2d) 857.

July 14, 1961—No. 38,168.

*Faegre & Benson, Raymond Scallen,* and *Rodger L. Nordbye,* for appellant.

*Frank J. Collins,* for respondent.

OTIS, JUSTICE.

Southdale Center, Inc., hereinafter called Southdale, has brought this action against Dorothy Lewis to recover delinquent rent and other arrearages owed to Southdale by an insolvent tenant, one Richard D. Pohl, under a lease which was the subject of a guaranty executed by Miss Lewis. The trial court heard the matter without a jury, found that the lease was entered prior to the execution of the guaranty, and concluded that, absent evidence of consideration running to defendant, she was entitled to judgment. From an order denying its motion for amended findings or a new trial, Southdale appeals.

The issues for decision are these: Viewed in the light most favorable to Miss Lewis, does the evidence compel a finding as a matter of law that Southdale entered the lease in reliance on her guaranty? If so, was the guaranty effective without notice to Miss Lewis of its acceptance by Southdale, and was there sufficient consideration to create a valid guaranty where no benefit accrued to the guarantor?

The record discloses that since 1953 Southdale has owned and operated a shopping center in Edina, Minnesota, and has leased to tenants a variety of retail stores. It appears without dispute that in the summer of 1956 Pohl began negotiations with Southdale for a lease in contemplation of opening a gift and greeting card shop. Southdale's executive vice president, William Crear, Jr., testified that Pohl's credit was "practically non-existent," and hence the landlord insisted upon his securing someone to guarantee the lease. According to Crear's testimony, Southdale would not have accepted the lease without a guaranty. However, Pohl produced a guaranty executed by Miss Lewis and the company found it acceptable.[1]

---

[1]So far as here pertinent, the guaranty provides as follows:

"In consideration of the making, execution and delivery of the within and attached lease of even date herewith between Southdale Center, Inc. as Landlord, and Richard D. Pohl, doing business as 'The Purple Door', as Tenant, and for value received, the undersigned Dorothy Lewis does absolutely and unconditionally hereby guarantee the performance of the within and attached lease and the payment of all rents to be paid and all covenants and agreements to be kept by the Tenant and by any Minnesota Corporation organized by Tenant to whom this lease is duly assigned by Tenant, under the terms thereof, provided, however, that the total liability of the undersigned shall be limited to the total aggregate amount of $3,600.00 as to all defaults unremoved by Tenant or such Corporation assignee. * * *

"Dated July 2, 1956.

"/s/ Dorothy Lewis
DOROTHY LEWIS

"In presence of
/s/ L. Davenport
"STATE OF MINNESOTA)  ss.
COUNTY OF HENNEPIN)

"On this 13th day of July, 1956, before me, a Notary Public, within and for said County, personally appeared DOROTHY LEWIS to me known to be the person described in, and who executed the foregoing instrument, and acknowledged that she executed the same as her free act and deed.

"/s/ L. Davenport
"Notary Public, Hennepin County, Minnesota
My commission expires 5-30-63
(Notarial Seal)"

Although the lease was entered in July 1956, the term was not to begin until October 1956, at which time Pohl took actual possession of the premises. The parties stipulated at the trial that Pohl paid no rental whatsoever from the inception of the lease and that he ultimately abandoned the premises, owing Southdale in excess of $3,600, which was the maximum amount of Miss Lewis' liability under the terms of the guaranty. Subsequently, Pohl was adjudicated a bankrupt.

The lease bears on its face the date July 2, 1956, is signed by Bruce B. Dayton and H. A. Hull as officers of Southdale, and acknowledged by them before a notary public under date of July 25, 1956. The parties through their counsel stipulated at the trial that the lease was executed by the tenant, Richard Pohl, on the same date that the guaranty was executed by Dorothy Lewis, namely, July 13, 1956. Counsel further stipulated as follows:

"Mr. Collins [counsel for defendant]: Your Honor, I'd like to point specifically to why we can't stipulate. The acknowledgement says that on July 25, '56, appeared personally Bruce B. Dayton and H. A. Hull. It says there they are respectively the president and secretary and it was signed in behalf of them. That is the acknowledgement of Dorothy Ives for the plaintiff, and then the acknowledgement on the part of the lessee, Pohl, is dated July 13th by another notary named Davenport and I don't see whether or not Pohl signed it; signed the lease on the 13th, prior to the execution of the lease by the lessor is conclusively established or how the defendant can be expected to stipulate that it was signed by Mr. Dayton and Mr. Hull on the 25th day of July. *We are in no position to say it wasn't, of course.*

"Mr. Nordbye [counsel for plaintiff]: I merely asked. If you want me to produce somebody to testify about that, I will be glad to.

"Mr. Collins: I'll stipulate to this, to save counsel that trouble. I'll stipulate that if Mr. Dayton, Bruce Dayton, and/or Mr. Hull, were called to testify in this proceeding that they would testify that it was signed by them respectively on the 25th day of July, 1956.

"Mr. Nordbye: You are referring to the—

"Mr. Collins: The date of the execution of the lease by the lessor, and if they were called they would so testify.

"Mr. Nordbye: That's agreeable with us, your Honor." (Italics supplied.)

■ It is Miss Lewis' contention that the stipulation did not require the trial court to adopt the Hull and Dayton version of the date when the lease was signed on behalf of Southdale. We do not agree. Under the familiar and long-established doctrine of O'Leary v. Wangensteen, 175 Minn. 368, 370, 221 N. W. 430, 431, it is the law of this state that "the court or jury cannot disregard the positive testimony of an unimpeached witness unless and until its improbability or inconsistency furnishes a reasonable ground for so doing."[2]

In the interest of expediting the trial of lawsuits and reducing their costs, litigants are encouraged to stipulate to facts which are not in serious dispute. Such a policy is reflected in the adoption by this court of Rule 16 of Rules of Civil Procedure as well as in the language of Minn. St. 546.08.

A stipulation that a particular witness would, if called, testify in a particular way does not constitute an admission that such testimony is true. It does not foreclose impeachment by the opposing party. Nevertheless, evidence thus received has the same force and effect, and must be given the same weight by the triers of the facts, as testimony orally adduced by a witness in open court under oath.[3]

Such a stipulation, in effect, merely waives the adverse party's right to cross-examine that particular witness.

Miss Lewis earnestly contends that the stipulated testimony is impeached in three particulars. First, Southdale's original complaint alleges: "That on July 2, 1956, one Richard D. Pohl, doing business as 'The Purple Door', leased from plaintiff certain premises * * *"; second, the guaranty which was signed July 13, 1956, recites that the "lease of even date" is attached; and, third, the lease itself begins: "THIS LEASE, made this 2nd day of July, 1956," and concludes: "IN WITNESS WHEREOF, the Landlord and the Tenant have signed their names and affixed their seals the day and year first above written."

---

[2]20 Dunnell, Dig. (3 ed.) § 10344a.

[3]Behrens v. Kruse, 132 Minn. 69, 155 N. W. 1065, 156 N. W. 1; Young v. Avery Co. 141 Minn. 483, 170 N. W. 693.

With respect to the first contention it is enough to say that the *effective* date pleaded by plaintiff was not an admission that the instrument was actually *signed* on that date.[4]

The recitation in the guaranty that the lease was attached is unsupported by other evidence. Miss Lewis herself was unable to say whether or not she observed it when she signed the guaranty, although the lease is a bulky document some 27 pages in length. However, it is not material whether the lease was actually attached to the guaranty and bore the same date since we are here concerned only with the date of execution by Southdale.

The date, July 2, 1956, was typed in the lease, and the recitation that the parties signed it on that date was part of a printed form. In any case the contention that July 2, 1956, was the date of execution is inconsistent with the stipulation of counsel that the tenant, Pohl, signed the lease in fact on July 13, 1956.

■ The execution date of an instrument may always be shown by parol. Crystal Lake Cemetery Assn. v. Farnham, 129 Minn. 1, 151 N. W. 418. We hold as a matter of law that the lease between Pohl and Southdale, although dated and effective July 2, 1956, was actually signed and executed by the landlord on July 25, 1956, and that Southdale was induced by, and relied on, Miss Lewis' guaranty of July 13, 1956, in entering into the lease agreement here involved.

■ Miss Lewis argues that without reference to the date Southdale consummated the lease with Pohl, her guaranty is ineffective because it lacks consideration and because Southdale failed to give her notice that the guaranty had been accepted.

The evidence discloses that no actual consideration was received by Miss Lewis from either Pohl, Southdale, or any other source. Southdale had no direct negotiations with Miss Lewis at any time prior to Pohl's bankruptcy. She testified that Pohl asked her to sign

---

[4]This allegation was subsequently amended to read thus:

"* * * that although said lease bears the date July 2, 1956, it was executed by said Pohl on the 13th day of July, 1956, and the execution thereof was completed on the part of the plaintiff by its President and Secretary who signed said lease on July 25, 1956, on behalf of said plaintiff."

the guaranty and that she did sign it "[b]ecause he said that he needed a signature to open at Southdale." Later in her examination she said she wasn't sure of the accuracy of her testimony with respect to the reasons which Pohl assigned for requiring her signature. In either case, if Southdale is to recover against Miss Lewis on the guaranty, it must be on the theory that Southdale relied on the guaranty to its detriment.

A number of our decisions dealing with the question of whether or not a guarantor is entitled to notice of the acceptance of his guaranty discuss the problem of consideration as well. J. R. Watkins Medical Co. v. McCall, 116 Minn. 389, 133 N. W. 966, was an action brought by a distributor against three guarantors, arising out of a contract, by the terms of which the distributor agreed to hire a particular traveling salesman provided the guarantors assumed the payment of any outstanding obligations owed by the salesman to the distributor at the time the guaranty was executed. When suit was brought, the guarantors resisted the claim on the theory they had never been given notice that the guaranty was accepted. Our court recognized that the decisions on whether formal acceptance of a guaranty as to future debts was necessary were in hopeless conflict, but held that no notice was necessary with respect to an absolute guaranty covering an existing debt, as distinguished from future advances which were conditional. The court determined that the hiring of the salesman was sufficient consideration for the defendants' guaranty.

In the instant case Miss Lewis relies on Northern Nat. Bank v. Douglas, 135 Minn. 81, 160 N. W. 193. That decision involved a guaranty of the payment of past debts as well as future loans from a bank to a lumber company. Again, the defense invoked by defendant was that he had not had notice that the guaranty had been accepted. The court held (135 Minn. 84, 160 N. W. 195):

"* * * The law is that a guaranty, although without consideration, is absolute when it is signed by the guarantor at the request of the guarantee, or where it is delivered by the former to the latter, or its execution is contemporaneous with the extension of credit to the principal."

The court in that case concluded that the guaranty was not contemporaneous with the extension of credit, that the guarantor received no actual consideration, and that notice of the acceptance was essential to the creation of the contract. However, the court observed that the case could be decided against the plaintiff on other grounds since the guaranty had been exhausted prior to the transaction there in question.

This court later considered the necessity for notice of acceptance in Stone-Ordean-Wells Co. v. Helmer, 142 Minn. 263, 171 N. W. 924. It is of incidental interest to note that in that case, as in this, the defense was interposed by way of a stipulation agreeing to what testimony one of the defendants would give were he present in court. In deciding the Stone-Ordean-Wells case, our court further eroded the concept of formal acceptance by holding that the recitation of *any* valuable consideration, however small, was sufficient to support the contract if it were otherwise valid. The court criticized decisions adopting a contrary theory by observing that many of them seemed to be (142 Minn. 266, 171 N. W. 925) "but offshoots of judicial tenderness in dealing with the rights and liabilities of sureties" and specifically decided:

"* * * no notice of acceptance is necessary where the contract of guaranty on its face acknowledges the receipt of a valuable consideration by the guarantor, however small, is definite as to time and duration and the amount of the indebtedness to be assumed and paid, and contains a specific and unconditional promise to pay the same on default of the principal debtor."

In that case, as in the instant case, the guarantors were fully aware of the obligation they assumed and knew that it would be relied on by the guarantee. Our court in the Stone-Ordean-Wells case distinguished the Northern Nat. Bank decision by pointing out that in the latter case the guarantor signed the instrument without knowledge that the guarantee had notice of its existence. The court in the Stone-Ordean-Wells case concluded that there was sufficient consideration to support the guaranty whether the amount acknowledged in the instrument was paid or not.

Finally, the whole matter of acceptance and consideration was laid to rest by this court in Midland Nat. Bank v. Security Elev. Co. 161 Minn. 30, 200 N. W. 851. There the plaintiff sought to recover against various guarantors for credit extended to the defendant elevator company. Again the guarantors resisted the action on the theory they had not received notice that the guaranty was accepted. Mr. Justice Stone in an exhaustive opinion rejected the contention that notice of acceptance is necessary in any situation where there has been reliance on the guaranty. The court held that the extension of credit was sufficient acceptance without notice. We noted that to hold otherwise would be to ignore the expressed intention of the guarantor and the ordinary rules of contract law. The confusion and lack of harmony in the previous cases led the court to observe that our prior decisions could not be reconciled. In disposing of the question of acceptance, the court laid down the rule which governs our decision in the instant case (161 Minn. 41, 200 N. W. 856):

"In many cases it may be a question whether the initial document is an absolute guaranty or only an offer. If it is the latter, the question may remain whether the offeror has required notice in order to complete acceptance. But wherever it is clear, as it is here and is in the ordinary case, that no such notice has been required by the offeror but that he intends the giving of credit in reliance on his guaranty, standing alone as to him unannounced, to be the binding act of acceptance, there is no room for holding notice necessary. It is too much like judicial alteration of contracts."

■ In dealing with the problem of consideration, the court in the Midland Nat. Bank case found that the guaranty contract was valid without reference to whether the defendant received any personal benefit. The court held that the only consideration necessary was the detriment suffered by the plaintiff in extending credit to the elevator company. Our subsequent decisions are to the same effect.[5]

One other opinion is worthy of comment. In Oswald v. Fratenburgh,

---

[5]Hall v. Oleson, 168 Minn. 308, 210 N. W. 84; W. T. Rawleigh Co. v. Franken, 200 Minn. 236, 273 N. W. 665; O'Neil v. Dux, 257 Minn. 383, 391, 101 N. W. (2d) 588, 594.

36 Minn. 270, 31 N. W. 173, Mr. Justice Mitchell had occasion to consider an action brought against guarantors in which the payment of rent was also involved. Although the case involved primarily the rights of an assignee, the court concluded its opinion with the following statement (36 Minn. 271, 31 N. W. 174):

"* * * It can hardly be necessary to add that the execution of the lease by plaintiff was sufficient consideration for defendants' guaranty."[6]

We therefore hold that where the terms of a guaranty unequivocally anticipate the extension of credit to a third person, and the guarantor can reasonably anticipate that the guarantee will act in reliance thereon, no notice of acceptance need be given the guarantor in order to make the contract effective. We further hold that under the circumstances of this case the consideration running from the landlord, Southdale, to the tenant, Pohl, will support Miss Lewis' contract of guaranty, and that the detriment suffered by Southdale in relying on her guaranty is in itself adequate consideration although no benefit whatever accrued to her.

■ This appeal is from an order denying the plaintiff's motion for amended findings or for a new trial, but where, as here, the appellant is entitled to recover damages as a matter of law, judgment will be so ordered without further proceedings below.[7]

Reversed and remanded.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.

---

[6]See, 38 C. J. S., Guaranty, § 26b, note 54; Weinsklar Realty Co. v. Dooley, 200 Wis. 412, 228 N. W. 515, 67 A. L. R. 875.

[7]Penn Anthracite Min. Co. v. Clarkson Securities Co. 205 Minn. 517, 520, 287 N. W. 15, 17; Shell Oil Co. v. Kapler, 235 Minn. 292, 301, 50 N. W. (2d) 707, 714; In re Estate of Arnt, 237 Minn. 245, 251, 54 N. W. (2d) 333, 337.