**C & D INVESTMENTS, Respondent,**

v.

**Loren H. BEAUDOIN, Appellant.**

**No. C9–84–1494.**

Court of Appeals of Minnesota.

March 26, 1985.

Gary G. Fuchs, Grannis, Campbell, Farrell & Knutson, St. Paul, for respondent.

Robert J. Miller, Meyer, Nelson & Miller, Ltd., Robbinsdale, for appellant.

Heard, considered and decided by LANSING, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LANSING, Judge.

Respondent C & D Investments (C & D), in a declaratory judgment action, sought to enjoin appellant Loren H. Beaudoin from foreclosing a mortgage on respondent's property and to have the mortgage set aside. The trial court granted judgment in favor of C & D, determining that the consideration for the obligation underlying the mortgage had failed and that Beaudoin had breached the parties' agreement to exhaust other collateral before foreclosing on the mortgage. We reverse.

## FACTS

This case arises from a complicated loan and guarantee transaction involving David Johnson and Clifford Hanson, the partners of C & D Investments; Loren H. Beaudoin; and a third party, Thomas Langseth. Langseth initiated the transaction by approaching the other parties with the idea of forming a partnership to acquire the interests of Langseth's solely owned corporation, H & L Investments, Inc., in "Senor T's," a bar and restaurant located in West St. Paul.

Langseth proposed this plan in mid-1981 when he was delinquent on personal and corporate debts amounting to approximately $300,000. He had approached the Riverside Community Bank for a loan, but the bank refused to lend him additional money without collateral. Langseth then began the series of discussions with Beaudoin and the partners of C & D that forms the basis of this litigation. Although the discussions occurred over the same time period, Beaudoin and the C & D partners never met one another, nor did they converse together until the day they signed the agreement to form the partnership.

Langseth's discussions with C & D were primarily with Johnson, whom Langseth knew and worked with in the real estate

business. Langseth was aware that Johnson and Hanson jointly owned a parcel of vacant commercial land in Waseca, Minnesota, and he proposed that the C & D partners pledge the Waseca property as collateral for the loan in return for receiving "units" in the proposed partnership.

Langseth approached Beaudoin at approximately the same time. Beaudoin had previously guaranteed bank loans and made personal loans to Langseth and H & L. Beaudoin held a mortgage on Langseth's condominium property and a second mortgage on his house as security for these loans, which exceeded $100,000. Langseth told Beaudoin that he wanted to secure a $300,000 bank loan and discussed his partnership plan. Beaudoin refused to guarantee the entire $300,000 loan, but agreed to guarantee $150,000. The bank, however, would not accept this arrangement and proposed, instead, that Beaudoin be the sole guarantor of the $300,000 loan.

A written "agreement to form partnership" was signed on September 16, 1981, by Johnson, Hanson, Beaudoin, and Langseth. The agreement provided for 20 partnership units: eight would be kept by Langseth; one each would go to Beaudoin, Johnson, and Hanson; and nine would be sold to other unknown investors for $40,000 each. The partnership's purpose was to acquire from H & L its interest in Senor T's (including equipment, fixtures, trade name, and a leasehold interest including an option to purchase) and then lease the equipment, etc., back to Senor T's.

In return for his one partnership share, Beaudoin agreed to personally guarantee a $300,000 bank loan given either to Langseth or H & L Investments. Langseth was to pay $100,000 of this loan to Beaudoin, which Beaudoin would then deposit in a certificate of deposit to be kept at the bank as collateral until the $300,000 loan was paid off in full.

H & L agreed to pay the interest on the loan. Langseth agreed to give Beaudoin a second mortgage on his homestead and a first mortgage on his condominium as security. These appear to be the same mortgage interests that Beaudoin already held as security for prior loans to Langseth.

In return for their two partnership units, Johnson and Hanson agreed to mortgage to Beaudoin free and clear of encumbrances the commercial property they owned in Waseca. They warranted the property was worth $150,000 and agreed to be personally liable to Beaudoin in the event a public foreclosure sale produced less than $150,000. In order to pledge the property free of encumbrances, C & D paid off an existing mortgage and obtained fee title to the property.

The parties signed an additional agreement specifying that in the event of default on the loan, Beaudoin would enforce his security interests in the following order: first by foreclosing on the H & L stock and assets, next by foreclosing on the second mortgage on Langseth's homestead, then by foreclosing on the mortgage on Langseth's condominium property, and finally by foreclosing on the Waseca property. Beaudoin, Hanson, and Johnson signed this agreement.

Documents necessary to effectuate the agreement were executed at or about the same time. These included the mortgage on the Waseca property, the loan agreement between H & L and the Riverside Community Bank, the guarantee by Johnson and Hanson to Beaudoin of the value of the Waseca property, Beaudoin's guarantee to the Riverside Community Bank, Langseth's guarantee to the Riverside Community Bank, the parties' agreement on the order of foreclosure on collateral, and a promissory note signed by Langseth in favor of C & D for $150,000 payable in the event the Waseca property went to Beaudoin after foreclosure.

On December 21, 1982, the parties executed an addendum to their September 16, 1981, agreement which changed the sequence in which Beaudoin could foreclose on collateral. The addendum allowed Langseth to refinance his condominium and apply the proceeds to the outstanding loan from Beaudoin. The remaining collateral could be foreclosed in any order, except

that the Waseca property still had to be foreclosed last.

The partnership proposed in the agreement was never formed. Langseth went into default on the bank loan, and Beaudoin, as guarantor, paid the $250,000 balance. Beaudoin unsuccessfully sought a buyer for the assets of Senor T's. He eventually foreclosed on the H & L stock, purchasing it for a minimal price at a sheriff's sale. Langseth's homestead had already been foreclosed on by the first mortgagee, and Beaudoin made no attempt to redeem the mortgage or to foreclose on his second mortgage on the property.

Beaudoin began foreclosure proceedings on the remaining collateral, the Waseca property. C & D then commenced this litigation to enjoin the foreclosure and to invalidate the mortgage on the grounds that (1) there was a failure of consideration because Johnson and Hanson never got their partnership shares, and (2) Beaudoin had breached the parties' agreement on the order of foreclosing on collateral by failing to redeem Langseth's homestead after foreclosure by the first mortgagee.

### ISSUES

1. Did the consideration for Beaudoin's mortgage on the Waseca property fail because the C & D partners did not receive their partnership shares?

2. Did Beaudoin's failure to foreclose his second mortgage on Langseth's homestead, or to redeem it after foreclosure by the first mortgagee, breach the parties' agreement?

### ANALYSIS

### I

C & D contends that because the proposed partnership was never formed and Johnson and Hanson never received partnership shares, the mortgage they gave in return for the shares is void for failure of consideration.

The Minnesota Supreme Court has clearly stated that a valid mortgage must be supported by consideration. *See Baker v. Citizens State Bank*, 349 N.W.2d 552, 557 (Minn.1984). This is because, although a mortgage technically does not require consideration, it is a conditional deed conveying property as security for indebtedness. The condition of the mortgage is payment of the underlying debt, which generally involves a contract requiring consideration. *Id.* Therefore, to determine the validity of this mortgage we must examine the sufficiency of the consideration supporting the parties' underlying agreement.

Consideration may consist of either a benefit accruing to a party or a detriment suffered by another party. *Estrada v. Hanson*, 215 Minn. 353, 355, 10 N.W.2d 223, 225 (1943). Consideration need not pass from the promisee to the promisor to be valid. *See Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*, 395 F.2d 388, 390 (8th Cir.1968). In addition, Minnesota follows the long-standing contract principle that a court will not examine the adequacy of consideration as long as something of value has passed between the parties. *See Estrada v. Hanson*, 215 Minn. at 356, 10 N.W.2d at 225–26.

The "agreement to form partnership" specifies that C & D's granting the mortgage on the Waseca property "is the consideration for Hanson and Johnson receiving one unit each of the partnership to be formed." A separate paragraph says that Beaudoin's receipt and deposit of $100,000 as collateral, in addition to his personal guarantee of the $300,000 loan, "is the consideration for [Beaudoin's] receiving one unit of the partnership to be formed."

The trial court found that the consideration for the mortgage was receipt by C & D of units of the proposed partnership. Therefore, failure to form the partnership rendered the agreement and the mortgage void for failure of consideration. It characterized agreements between Langseth and C & D and between Langseth and Beaudoin as "separate and distinct" and stated, "[t]here is no evidence whatever to show any contract between [C & D] and [Beau-

doin] and no evidence of any consideration between [C & D] and [Beaudoin]." The court noted that Beaudoin had previously guaranteed considerable sums to Langseth and held security interests in Langseth's homestead and condominium, and therefore his motivation to enter the contract was not the mortgage given by C & D but rather the opportunity to recoup his initial investment by guaranteeing additional amounts to Langseth.

We find that the contract, although articulating separate "consideration" for each party, is a single, complex, multi-party transaction signed by all parties. It contains interdependent provisions that give all parties separate obligations and the potential to benefit significantly in different ways.

Beaudoin's guarantee and provision of collateral constituted legal detriment to him, as did the C & D partners' giving of the mortgage. Because courts need not examine the adequacy of consideration, Beaudoin's guarantee itself would suffice, even without the greater detriment of being called on to perform under his guarantee. This venture depended on participation by all parties. Their perceived incentives for entering the contract are separate from the question of legally sufficient consideration. C & D's failure to benefit does not invalidate Beaudoin's consideration. It was error to find the agreement void for failure of consideration.

## II

■ The trial court found that Beaudoin breached the parties' agreement that the other sources of collateral would be exhausted before Beaudoin foreclosed the Waseca property. Beaudoin's mortgage on the condominium property was presumably satisfied when Langseth refinanced it, and the H & L stock was foreclosed, leaving Langseth's homestead and the Waseca property as the remaining collateral. Beaudoin does not dispute that he made no attempt to redeem Langseth's homestead after it was foreclosed by the holder of the first mortgage and that he would have had the legal right to redeem. The question is whether he had a duty to redeem under the contract.

The parties' agreement regarding the order in which Beaudoin was to exhaust the sources of collateral uses the term "foreclose" and is silent on any duty to redeem in the event of a foreclosure by the first mortgagee. A duty to redeem in the event of foreclosure by another party is considerably broader than an agreement to proceed in a certain order when foreclosing on property, because redemption requires access to cash assets. We cannot impose on Beaudoin a broader duty than that for which he contracted.

After foreclosure by the first mortgagee on Langseth's homestead, it was no longer possible for Beaudoin to foreclose his second mortgage on the property. He was therefore justified under the terms of the parties' agreement to proceed to the final piece of collateral, the mortgage on the Waseca property.

### DECISION

The trial court's order enjoining Beaudoin from foreclosing the mortgage on the Waseca property and setting aside the mortgage as void for failure of consideration is reversed.

Reversed.