**STATE BANK OF COLOGNE, Respondent,**

v.

**Selma SCHRUPP, Appellant.**

No. C4-85-411.

Court of Appeals of Minnesota.

Oct. 8, 1985.

Review Denied Dec. 13, 1985.

Robert A. Nicklaus, Chaska, for respondent.

Tina H. Appleby, Minneapolis, for appellant.

Heard, considered and decided by HUSPENI, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Respondent State Bank of Cologne (Bank) brought an action against appellant Selma Schrupp to enforce a guaranty agreement. After a two-day trial, the trial court directed a verdict against Schrupp and in favor of the Bank. Schrupp appeals from the judgment awarding the Bank $137,380.82 and from the trial court's denial of her motion for amended findings or a new trial. We affirm in part, reverse in part and remand.

## FACTS

Between July 1980 and September 1982, the Bank made between fifteen and twenty loans to Schrupp's daughter and son-in-law, LeMane and Lloyd Dopkins, who were in the business of making hydraulic valves. The Dopkinses filed bankruptcy in July 1983. At the time of the trial in this action, they owed the Bank approximately $134,000.

In early September 1982, the president of the Bank, Lester Mellgren, told the Dopkinses that the Bank needed additional security to back their existing indebtedness of approximately $102,000 as well as to back any additional loans that the Dopkinses sought. Mellgren testified that Dopkinses' loans were delinquent at that time and the Bank could have demanded full payment of their indebtedness. Mellgren provided the Dopkinses with a continuing guaranty form and a financial statement form.

LeMane Dopkins testified that Mellgren told her and Lloyd Dopkins that the guaranty would merely insure that the Bank, rather than the guarantor's heirs, would receive the guarantor's estate upon the guarantor's death in the event that the Dopkinses still were indebted to the Bank. Mellgren denied making this representation to the Dopkinses.

LeMane Dopkins testified that early in the morning on September 7, 1982, Mellgren called the Dopkinses and told them that he had to have an executed guaranty that day. LeMane then took the guaranty form over to the home of her mother. Mrs. Schrupp was 78 years old at the time. Both LeMane Dopkins and Schrupp testified that on that particular day Schrupp was dizzy and weak. Schrupp testified that she could not have read anything that morning and she thought she had had a stroke. LeMane testified that she explained the guaranty to Schrupp the same way Mellgren had explained it to her and Schrupp signed the guaranty. Schrupp testified that she does not remember signing the guaranty and she did not recall seeing it or the financial statement until after this action was brought.

After Schrupp signed the guaranty, LeMane took her to her doctor. The doctor was not available, so they made an appointment for later that day. When Schrupp saw the doctor, he prescribed three medications including Meclizine for dizziness. Subsequently, Schrupp stayed with the Dopkinses for a couple of days, because she did not feel well enough to stay at her own home.

LeMane gave the executed guaranty to Lloyd and Lloyd delivered the executed guaranty and a financial statement on Schrupp to Mellgren on September 7, 1982. At that time, the evidence indicates that the Bank filled in the name and address of the Bank and the names of the Dopkinses' businesses on the guaranty form. The financial statement estimated that Schrupp had a net worth of $165,000—$25,000 cash and real estate valued at $140,000. The evidence is conclusive that Schrupp did not fill out or sign, the financial statement. There is no testimony in the record which indicates who did fill it out.

Subsequently, on September 10, 1982, Mellgren, in his capacity as president of the Bank, made an additional loan of $19,700 to the Dopkinses.

No one at the Bank ever had any contact with Schrupp concerning the guaranty. Schrupp testified that she was not aware of the guaranty until someone from another bank contacted her ten months later in July 1983. After the Dopkinses filed bankruptcy, the Bank sought to collect the amount outstanding on the Dopkinses' loans from Schrupp pursuant to the guaranty agreement.

The record indicates that during the trial the judge had some difficulty hearing at least the handwriting expert's testimony. Following the handwriting expert's testimony, the attorneys accurately summarized the expert's testimony for the judge. After a two-day trial, the trial court directed a verdict in favor of the Bank on the grounds that the guaranty agreement is valid and there was no fact issue to submit to the jury.

### ISSUES

1. Did the trial court err in directing a verdict on the issue of appellant's competency?

2. Did the trial court err in directing a verdict on whether notice of respondent's acceptance of the guaranty was required?

3. Did the trial court err in determining as a matter of law that the guaranty was supported by sufficient consideration?

4. Did the trial court erroneously exclude testimony relating to appellant's lack of intent or assent to contract?

### ANALYSIS

#### I.

In reviewing the directed verdict against Schrupp, we must make an independent determination of the sufficiency of the evidence to present a fact question to the jury. *Nemanic v. Gopher Heating and Sheet Metal, Inc.*, 337 N.W.2d 667, 669 (Minn.1983). We must accept as true all evidence favorable to Schrupp and all reasonable inferences that can be drawn from the evidence. *Chemlease Worldwide Inc. v. Brace, Inc.*, 338 N.W.2d 428, 432 (Minn. 1983). The directed verdict is sustainable only if it clearly would be the duty of the trial court to set aside a contrary verdict, as against the evidence or contrary to the law of the case. *Nemanic*, 337 N.W.2d at 670. We conclude this standard was not met in this case.

A crucial issue raised in this case is whether Schrupp was competent to enter into a valid guaranty agreement. Parties to a guaranty must be competent to enter into a valid agreement. *See, e.g., Watkins Products, Inc. v. Butterfield*, 274 Minn. 378, 380, 144 N.W.2d 56, 58 (1966).

The standard for determining whether a person is mentally capable of entering into a contract is whether she has the ability to understand to a reasonable extent the nature and effect of what she is doing. *In re Estate of Nordorf*, 364 N.W.2d 877, 880 (Minn.Ct.App.1985) (citing *Krueger v. Zoch*, 285 Minn. 332, 334, 173 N.W.2d 18, 20 (1969)).

Viewing the evidence in the light most favorable to Schrupp and drawing all reasonable inferences in Schrupp's favor, we conclude that there is sufficient evidence consistent with Schrupp's claim of incompetency to raise a question of fact for

the jury. At the time that Schrupp signed the guaranty agreement, she was seventy-eight years old. Schrupp testified that she "had a bad fainting spell that morning, I was in a daze." She thought she had had a stroke. She testified that she could not read and she does not remember getting dressed. Schrupp recognized her signature on the guaranty agreement, but she does not remember signing it. Later that day, her doctor prescribed medication specifically for dizziness.

While we recognize that the evidence of incompetency is inconclusive, we do believe it is sufficient to present a fact question for the jury regarding whether Schrupp had the ability to understand the nature and the effect of her signature on the guaranty agreement. We recognize that an incompetency defense may fail when the alleged incompetency lasts only a short time and the party alleging the incompetence is attempting to avoid performance of a contract after she is no longer incompetent. *Krueger*, 285 Minn. at 335, 173 N.W.2d at 21. At this stage of the case, however, we do not believe that Schrupp's incompetency defense must fail as a matter of law.

We also note that the names of the Bank and the Dopkinses' businesses were not filled in on the guaranty agreement when Schrupp signed the agreement. While this fact does not render the agreement invalid as a matter of law, it may be relevant to the issue of Schrupp's competency.

## II.

■ If Schrupp's incompetency defense succeeds at trial, the guaranty is invalid and the issue of whether the Bank was required to give Schrupp notice of its acceptance of the guaranty is immaterial. If Schrupp's incompetency defense fails, however, the requirement of notice is still an issue. Therefore, we must address whether the trial court erred in determining as a

matter of law that the Bank was not required to give Schrupp notice of its acceptance of the guaranty.

The rule in Minnesota regarding when notice is required is set forth in *Midland National Bank v. Security Elevator Co.*, 161 Minn. 30, 200 N.W. 851 (1924), and reiterated in *Southdale Center, Inc. v. Lewis*, 260 Minn. 430, 110 N.W.2d 857 (1961):

> [W]here the terms of a guaranty unequivocally anticipate the extension of credit to a third person, and the guarantor can reasonably anticipate that the guarantee will act in reliance thereon, no notice of acceptance need be given the guarantor in order to make the contract effective.

*Id.* at 439, 110 N.W.2d at 863.

Schrupp relies heavily on *Union National Bank in Minot v. Schimke*, 210 N.W.2d 176 (N.Dak.1973), for her authority that notice was required here. In *Schimke*, Schimke signed a guaranty contract upon her husband's request without any discussion as to its legal effect and the bank involved never contacted her about the guaranty. The North Dakota Supreme Court held that the bank never communicated the required notice of acceptance to Schimke.

*Schimke* is not applicable to this case because Minnesota has adopted a different "acceptance" rule than North Dakota. North Dakota follows the rule set forth by the United States Supreme Court in *Davis Sewing Machine Co. v. Richards*, 115 U.S. 524, 6 S.Ct. 173, 29 L.Ed. 480 (1885) and *Davis v. Wells Fargo & Co.*, 104 U.S. (14 OTTO) 159, 26 L.Ed. 686 (1881).[1] Minnesota specifically rejected the United States Supreme Court's standard in *Midland National Bank*. *Midland National Bank*, 161 Minn. at 38, 200 N.W. at 855. Hence, we cannot look to *Schimke* for guidance on this issue.

---

1. The United States Supreme Court rule requires notice of acceptance when the only consideration for the guaranty is future advances to the debtor and the guarantor signs the guaranty

without any request from the creditor and in the creditor's absence. *Schimke*, 210 N.W.2d at 178 (quoting *Davis Sewing Machine Co. v. Richards*, 115 U.S. at 524, 6 S.Ct. at 173).

In applying the rule set forth in *Southdale Center,* we have no trouble with the first prong of the test. The guaranty signed by Schrupp unequivocally anticipated the extension of credit to the Dopkinses.

The second prong of the test is more troublesome. The appellate courts in Minnesota have never interpreted the language in *Southdale* regarding the guarantor's reasonable anticipation that the guarantee will act in reliance on the guaranty. In light of the particular facts of this case when an incompetency defense such as Schrupp's is raised, it would be inconsistent to direct the trial court to submit the competency issue to the jury without also directing it to submit the issue of Schrupp's reasonable anticipation of the Bank's reliance on the guaranty. We believe that the issue of Schrupp's reasonable anticipation of the Bank's reliance is a question of fact which should be submitted to the jury along with the competency issue. Accordingly, we conclude that the trial court erred in determining as a matter of law that the Bank was not required to give Schrupp notice of its acceptance.

### III.

While the trial court erred in directing a verdict on the issues of competency and the notice requirement, the trial court did properly determine that there was sufficient consideration for the guaranty.

■ A creditor's promise to forebear from calling in a debtor's outstanding loans, whether verbal or implied by the circumstances, can be sufficient consideration to support a guarantee by a third-party guarantor. *Baker v. Citizens State Bank of St. Louis Park,* 349 N.W.2d 552, 558 (Minn.1984). Both LeMane Dopkins and Mellgren testified that if the Dopkinses had not provided the Bank with additional security the Bank would have called in the outstanding loans. Implicit in this testimony is the Bank's and the Dopkinses' understanding that the Bank would not foreclose if the Dopkinses provided additional security. Consistent with this understanding, the Bank did forebear once it received the guaranty signed by Schrupp.

In addition to the Bank's forebearance, the Bank's September 10 loan to the Dopkinses is sufficient consideration to support the guaranty. In September 1982, the Dopkinses sought an additional loan from the Bank. The evidence is uncontroverted that Mellgren told the Dopkinses that the Bank needed additional security to support both their existing indebtedness *and* any future loans. Future loans were contingent upon the Dopkinses providing the Bank with additional security. On September 10, 1982, three days after the Bank received the executed guaranty, the Bank loaned the Dopkinses an additional $19,700. The guaranty made the Dopkinses eligible for an additional loan which they otherwise would not have obtained.

The consideration running from the Bank to the Dopkinses supports Schrupp's guaranty, even though no benefit accrued to Schrupp herself. *See Southdale Center,* 260 Minn. at 439, 110 N.W.2d at 863.

### IV.

■ Schrupp contends that the trial court erroneously excluded evidence on the issue of Schrupp's lack of intent or assent to the guaranty agreement. The only instance where the trial court excluded evidence on this issue is when it did not allow LeMane Dopkins to testify regarding her understanding of what a guaranty is. The trial court properly excluded this testimony because LeMane's understanding of the guaranty was irrelevant. The relevant evidence related to what LeMane told her mother about the guaranty and the trial court allowed LeMane to testify about that conversation. We find no error here.

Finally, our careful review of the transcript satisfies us that Schrupp was not prejudiced by the judge's slight hearing impairment.

### DECISION

The trial court properly determined as a matter of law that there was sufficient

consideration for the guaranty. The trial court did not err in the evidentiary rulings raised on appeal. The trial court, however, did err in directing a verdict on the issues of appellant's competency and the notice requirement. Accordingly, we remand this case for a new trial restricted to the issues of whether appellant was competent to enter into a valid guaranty agreement with respondent and whether appellant could reasonably anticipate that respondent would act in reliance on the guaranty.

Affirmed in part, reversed in part and remanded.