James **BROOKSBANK**, Respondent,

v.

Harlan **ANDERSON**, Appellant,

**Precision Mix, Inc., f/k/a Total Mix Ration, Inc., Defendant.**

No. C2–98–391.

Court of Appeals of Minnesota.

Dec. 8, 1998.

Review Denied Jan. 27, 1999.

---

David K. Snyder, Eckberg, Lammers, Briggs, Wolff & Vierling, P.L.L.P., Stillwater, for respondent.

Larry J. Peterson, Larry J. Peterson & Associates, St. Paul, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, ANDERSON, Judge, and THOREEN *, Judge.

## OPINION

ANDERSON, Judge.

Respondent James Brooksbank brought an action against appellant Harlan Anderson to enforce a guarantee agreement. The district court held that a 1996 agreement was valid and enforceable, and, therefore, found in favor of respondent. This appeal is from a judgment awarding respondent $86,869.95.

We affirm in part, reverse in part, and remand.

## FACTS

In 1984, appellant Harlan Anderson and respondent James Brooksbank formed a corporation, Total Mix Ration, Inc., for the purpose of developing, producing, and marketing a device for mixing feed for farm animals. Each owned one-half of the outstanding shares. Appellant served as the president, respondent as the vice-president, and Philip Kramlinger as the secretary/treasurer.

Under a July 25, 1994, letter of intent signed by all three individuals, respondent was to loan the corporation up to $28,000 for Phase 1 (the initial development activity) and additionally up to $70,000 for Phase 2 (the prototype development). Appellant was to guarantee one-half of these loans, with the guarantee terminating upon entry into Phase 3 (the manufacture and sale). These terms were included in the shareholder agreement that appellant and respondent entered into on August 25, 1994 (the 1994 agreement). This agreement also stated that:

> In the event that [respondent] and [appellant], in their separate sole discretion, at any time hereafter agree to cause the Corporation to proceed to manufacture and sell the Product, [respondent] and [appellant] shall each contribute an additional $32,000 to the capital of the Corporation in exchange for an additional 32,000 of the Corporation's common shares.

On February 1, 1995 (the 1995 agreement), the parties signed a new shareholder agreement which modified the 1994 agreement. This agreement provided that respondent would make advances to the corporation against a $100,000 note but only with appellant's approval. Appellant agreed to guarantee one-half of the loans totaling $73,739.90 already made pursuant to the 1994 agreement, and one-half of all advances against the $100,000 note. Respondent made advances totaling $173,739.90 to the corporation; however, he did not obtain approval from appel-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

pointment pursuant to Minn. Const. Art. VI, § 10.

lant for the advances as required by the 1995 agreement.

On April 30, 1996 (the 1996 agreement), appellant and respondent signed a new shareholder agreement, superceding all prior agreements. The 1996 agreement states that appellant "has and does personally guarantee the repayment of fifty percent of the amount of the above loans ($173,739.90) in connection with those Phase 1 and Phase 2 loans." The 1996 agreement also states:

The parties agree that all additional funds advanced to the Corporation shall be loans from shareholders and [respondent] and [appellant] shall contribute equal amounts of loans to the Corporation, none of which will be guaranteed by either party. It is contemplated that if a decision is made to proceed with the Phase 3 development and marketing, that both [respondent] and [appellant] will make an additional loan in the amount of $33,000 each for that purpose and shall make such additional loans on an equal basis as may be required from time to time during the Production and marketing of the Product.

The agreement was signed by respondent, appellant (who signed the agreement, "Harlan Anderson, Pres."), and Precision Mix, Inc. (by Kramlinger, as Secretary). There was no separate personal guarantee other than that within the agreement itself. At the same time the 1996 agreement was signed, both respondent and appellant each issued a loan to the corporation in the amount of $6,000. There was no indication in the agreement or on the checks as to the purpose of these loans. In a later shareholder agreement, signed only by respondent and mailed to appellant with a letter indicating its purpose, the $6,000 loans were described as loans for Phase 3.

Less than three months later, respondent notified appellant, by a notice dated July 16, 1996, that the note held by respondent in the amount of $173,739.90 was thereby recalled, and that appellant's obligation on the guarantee was $86,869.95. Two months later, respondent commenced an action against appellant to recover the money under the guarantee.

After a trial to the district court, the court found that the appellant's personal guarantee in the 1996 agreement was a mere promise not supported by consideration. The district court also found appellant liable for only half of the $73,739.90 under the 1995 agreement, but not for half of the additional $100,000 respondent loaned to the corporation after the 1995 agreement was signed, because respondent had breached his contractual obligation to appellant by failing to obtain appellant's approval for the loans. The district court also found that Phase 3 had not begun.

Respondent moved for amended findings or for a new trial. Respondent argued that the adequacy of consideration for the 1996 agreement was raised for the first time in the court's findings. Respondent also argued that appellant did not plead the issue as an affirmative defense, that the issue was not litigated at trial, and that there was adequate consideration for the guarantee contained in the 1996 agreement. Appellant argued that the issue had been litigated, noting:

Throughout the discovery process leading up to the trial we repeatedly were asking, and at the trial itself, [respondent], what did you give to [appellant] to have him sign the April '96 agreement in which he was reaffirming a debt. And [respondent] testified at the hearing that he didn't give him anything.

\* \* \* \*

And so we're arguing that throughout the course of the trial this issue of consideration was in and out of the testimony and the paperwork in more than numerous ways.

In appellant's opening argument at trial, appellant stated that there was no consideration given for the 1996 agreement. During the trial, appellant's counsel asked respondent, "[w]hat did you pay [appellant] to reinstate the guaranty when he signed that April 30, '96 agreement?" Although respondent's counsel made an evidentiary objection to the question, which was overruled, he did not object to appellant raising the issue of consideration.

The district court filed amended findings and an order for judgment. The district court found "that there is not sufficient evi-

dence to sustain its prior finding of lack of consideration for the April 30, 1996 Agreement." The district court concluded that the 1996 agreement was supported by consideration with respondent's commitment to advance an additional $33,000 in unguaranteed loans to the corporation, and commitment to contribute unguaranteed loans to the corporation in amounts equal to those to be made by appellant. The district court concluded that these provisions constituted consideration because they created new or different obligations by respondent, which were not contained in earlier agreements. Because the district court concluded that consideration supported the 1996 agreement, it ordered that judgment be entered in favor of respondent for $86,869.95 as a result of the personal guarantee in the 1996 agreement.

## ISSUES

I. Is appellant precluded from arguing on appeal that there is a lack of consideration for the 1996 agreement because appellant did not plead this issue as an affirmative defense?

II. Did the district court err in determining that additional consideration was required for the 1996 agreement?

III. Did the district court err in determining that adequate consideration exists for the 1996 agreement?

IV. Is the court's finding that Phase 3 had not been entered into prior to the 1996 agreement clearly erroneous?

## ANALYSIS

### I.

■ Minn. R. Civ. P. 8.03 requires that parties in their responsive pleadings "set forth affirmatively * * * failure of consideration * * * and any other matter constituting an avoidance or affirmative defense." This court will not generally consider matters that were not argued and considered in the court below. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). This includes affirmative defenses not raised in trial court pleadings and not considered by the trial court.

*Septran, Inc. v. Independent Sch. Dist. No. 271*, 555 N.W.2d 915, 919 (Minn.App.1996), *review denied* (Minn. Feb. 26, 1997). However, " '[i]ssues litigated by either express or implied consent are treated as if they had been raised in the pleadings.' " *Id.* (quoting *Roberge v. Cambridge Coop. Creamery Co.*, 243 Minn. 230, 234, 67 N.W.2d 400, 403 (1954)).

■ In the original findings, the district court found that appellant's "personal guarantee, contained in the April 30, 1996 agreement, of 50% of the $173,739.90 already advanced by [respondent], is a mere promise not supported by consideration." In fact, the issue of consideration was raised, without objection, by appellant, first in his opening statement and later by way of direct examination, with only an evidentiary objection by respondent, which was overruled. Because respondent did not properly object to this line of questioning, the issue of consideration was litigated by implied consent and is reviewable by an appellate court. *See id.* (implying appellant's consent to litigation of affirmative defense not raised in respondent's pleadings because appellant failed to object to the court raising the issue).

### II.

■ A reviewing court is not bound by and need not give deference to a district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984).

A modification of a contract does not require a new consideration if it is made while the contract is still executory and there has been no breach. In such case the original consideration attaches to and supports the modified contract.

*Mitchell v. Rende*, 225 Minn. 145, 149, 30 N.W.2d 27, 30 (1947) (emphasis added) (citation omitted). An executory contract is a "contract that has not as yet been fully completed or performed." *Black's Law Dictionary* 570 (6th ed.1990).

■ Appellant argues that Phase 3 began before the 1996 agreement was signed and that the 1995 agreement (incorporating the

1994 agreement) was no longer executory. Appellant also argues that, even if the 1995 agreement was executory, consideration was required because the 1995 agreement had been breached. Respondent argues that no additional consideration was required for the 1996 agreement because the 1995 agreement remained executory. However, respondent failed to address the impact of the breach of the 1995 agreement. The district court concluded that additional consideration was required under the 1996 agreement because respondent breached the 1995 agreement. We agree.

The 1996 agreement superceded all prior agreements and constituted a modification of both the 1994 and 1995 agreements. The 1994 agreement provided that the beginning of Phase 3 would occur when both parties affirmatively agreed to proceed to Phase 3 and contributed $32,000 of capital for that Phase. Neither that agreement nor those advances occurred, so the 1994 agreement remained executory. Because the 1994 agreement was incorporated into the 1995 agreement, the 1995 agreement also required the entry of Phase 3 before the guarantee would expire; therefore the 1995 agreement had not been fully performed and it, too, remained executory.

■ Consideration is not required if the contract to be modified is still executory and there has been no breach. *Mitchell*, 225 Minn. at 149, 30 N.W.2d at 30. Respondent breached the 1995 agreement when he made advances to the corporation on the $100,000 note without the consent of appellant. Because respondent breached the 1995 agreement, consideration is required for the 1996 agreement.

### III.

In its amended findings, the district court determined that the 1996 agreement was supported by consideration in the form of respondent's commitment to advance an additional $33,000 in unguaranteed loans to the corporation and commitment to contribute unguaranteed loans to the corporation in amounts equal to those to be made by appellant. The trial court concluded that these provisions constituted consideration because

they created new or different obligations on the part of respondent, which were not contained in the prior agreements. We disagree.

■ Determining whether sufficient consideration exists for an agreement is a question of law. *Concordia College Corp. v. Salvation Army, Verona, N.J.*, 470 N.W.2d 542, 546 (Minn.App.1991), *review denied* (Minn. Aug. 2, 1991). A reviewing court is not bound by and need not give deference to a district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n*, 358 N.W.2d at 642. "Minnesota follows the long-standing contract principle that a court will not examine the adequacy of consideration as long as something of value has passed between the parties." *C & D Investments v. Beaudoin*, 364 N.W.2d 850, 853 (Minn.App.1985) (citing *Estrada v. Hanson*, 215 Minn. 353, 356, 10 N.W.2d 223, 225–26 (1943)), *review denied* (Minn. June 14, 1985). It is, however, necessary to distinguish the adequacy of consideration from the existence of consideration. *Harrington v. Harrington*, 365 N.W.2d 552, 555 (N.D.1985). The issue of whether consideration truly exists is not one of mere formalism; something of value must be given in return for performance or promise of performance. *Deli v. Hasselmo*, 542 N.W.2d 649, 656 (Minn.App.1996), *review denied* (Minn. Apr. 16, 1996).

Respondent argues that the consideration for the 1996 agreement was: (1) respondent's commitment to lend at least $33,000 more to the corporation; (2) lending $6,000 contemporaneously with execution of the 1996 agreement; (3) forbearance by respondent on the guarantees and notes earlier signed by appellant, and (4) an express agreement to make loans to the corporation for no greater capital position.

■ In the 1994 agreement, respondent and appellant agreed that they would each contribute $32,000 to the capital of the corporation, in exchange for stock, if they agreed to proceed to Phase 3. In the 1996 agreement, they agreed that they would each loan $33,000 to the corporation if they made a decision to proceed to Phase 3. The difference between the amounts to be loaned is

irrelevant and insignificant, particularly when evaluated in light of the decision of respondent to terminate the 1996 agreement less than three months after executing it.

■ Second, the 1996 agreement is entirely silent concerning the two $6,000 loans made to the corporation by the shareholders. Respondent, initially, in a writing sent to appellant, characterized the $6,000 payment as a Phase 3 expense. He later reversed field, alleged mistake, and argued at trial and now on appeal that the payment was consideration for the 1996 agreement. The record is devoid of any evidence characterizing the loan and thus it cannot constitute consideration.

■ Third, while it is correct that a creditor's agreement to forbear from collecting on a note can constitute consideration for a third party's guarantee, if no time for forbearance is specified, a reasonable period of time is implied. *See Baker v. Citizens State Bank*, 349 N.W.2d 552, 558–59 (Minn. 1984). Respondent waited less than three months. Consider the undisputed status of this business at the time of the 1996 agreement. The business was under significant financial stress. Respondent had failed to secure permission, as required in the 1994 agreement, for the outstanding loans already owed by the corporation to Brooksbank placing in peril Brooksbank's claim on the personal guarantee of his co-shareholder. There is a factual dispute between the parties regarding whether a marketable product existed. Whether it existed or not, there is no question that the shareholders were some significant period of time away from realizing any revenue. Yet here we are asked to believe that forbearance of less than eighty days is reasonable consideration in exchange for the renewed guarantee. Such a position is unreasonable and we decline to adopt it. *Compare id.* at 559 (finding that forbearance from calling outstanding debt for period of seven days was unreasonably short length of time and, therefore, was not consideration for mortgage guarantee), *with Westbrook State Bank v. Anderson Land & Cattle Co.*, 364 N.W.2d 416, 419 (Minn.App.1985) (finding that forbearance for nearly two years was more than adequate for mortgages given to

secure preexisting debt). While the law regarding forbearance is not settled, respondent's forbearance in this case was not sufficient to constitute consideration.

Finally, the 1996 agreement did not expressly require the parties to make additional loans to the corporation. It states that additional funds advanced shall be loans, but there is no enforceable promise to make additional loans, and therefore, no consideration.

We conclude that there was no consideration given by respondent for the 1996 agreement. Therefore, with respect to this judgment, we reverse the district court.

### IV.

■ The district court found that Phase 3 had not been entered into before respondent called in his notes. This court will not set aside a trial court's findings of fact unless they are clearly erroneous. Minn. R. Civ. P. 52.01. The Phase 3 evidence is clear. The 1994 agreement required that, for Phase 3 to begin, there must be an express agreement between the parties and a contribution of $32,000 to capital. Neither the agreement nor the contribution was made and the finding with regard to Phase 3 is not clearly erroneous.

### DECISION

The district court properly determined as a matter of law that additional consideration was required for the 1996 agreement but erred in determining that adequate consideration existed. The district court's finding that Phase 3 had not been entered into is not clearly erroneous. Accordingly, we remand this case for reinstatement of the original findings. Both respondent's motion to strike appellant's submission to this court dated September 2, 1998, and respondent's accompanying motion for attorney fees, are denied.

**Affirmed in part, reversed in part, and remanded.**

THOREEN, Judge (dissenting).

I respectfully dissent.

Without agreeing with the trial court that consideration is necessary for the 1996 agreement, it is my opinion that there was adequate consideration for the 1996 agreement. Therefore, I would affirm the judgment based on the amended findings.

Pursuant to the 1994 agreement, respondent lent the corporation $73,739.90 for Phase 1 and 2 and appellant guaranteed one-half of these loans, with the guarantee terminating upon the entry into Phase 3. The agreement also provided that if the parties agreed to proceed to Phase 3, they would each contribute $32,000 to the capital of the corporation in exchange for an additional 32,-000 of the corporation's common shares.

The 1995 agreement provided that respondent would make advances against a $100,000 note. Appellant agreed to guarantee one-half of the loans already made totaling $73,-739.90, and one-half of all advances against the $100,000. At this point, no amount of the $32,000 contribution to the capital of the corporation had been made. The 1995 agreement also stated that:

> It is understood and agreed by and between the parties that the total aggregate loans to be made by [respondent] to the Corporation * * * shall not exceed the aggregate sum of $173,739.90 unless this Agreement is modified in writing by all parties hereto.

The 1996 agreement stated that

> if a decision is made to proceed with the Phase 3 development and marketing, that both [respondent] and [appellant] will make an additional loan in the amount of $33,000 each for that purpose * * *.

The trial court, in its amended findings, found that this agreement to lend additional money to the corporation constitutes consideration for the 1996 agreement, because it imposes on respondent a new or different obligation that was not contained in the prior agreements. The majority finds that the difference between the $32,000 contribution for capital under the 1994 agreement and the $33,000 loan to the corporation under the 1996 agreement is insignificant and constitutes no consideration. I disagree.

Consideration may be found in the form of either a benefit accruing to a party or a detriment suffered by another party. *C & D Investments v. Beaudoin,* 364 N.W.2d 850, 853 (Minn.App.1985), *review denied* (Minn. June 14, 1985). Respondent's 1996 agreement to lend the corporation an additional $33,000, after he had already lent it $173,-739.90 and contributed $1,000 in capital, when appellant had only contributed $1,000 in capital, was a detriment to respondent as well as a benefit to the corporation, which was nearly out of money. Consideration need not pass from promisee to promisor to be valid. *See C & D Investments,* 364 N.W.2d at 853. Respondent stated in the 1995 agreement that he would not lend more money to the corporation unless a new agreement was made; he also testified that he would not lend more money absent a new agreement because the corporation was in debt and running out of money. His subsequent promise of an additional loan was consideration. *See State Bank v. Schrupp,* 375 N.W.2d 48, 53 (Minn.App.1985) (finding that bank's loan to party is sufficient consideration to support third party guarantee because guarantee made party eligible for additional loan that they otherwise would not have obtained), *review denied* (Minn. Dec. 13, 1985).

The majority determines that the $33,000 loan, however, is only an additional $1,000 and an insignificant difference from the original agreement to contribute $32,000 to the corporation for capital. Even if agreeing to contribute money for capital and agreeing to contribute money as a loan are regarded as equivalent obligations, there is at least a $1,000 difference, which is sufficient additional consideration to support the 1996 agreement. *See Estrada v. Hanson,* 215 Minn. 353, 356, 10 N.W.2d 223, 225–26 (1943) ("It is unnecessary that a consideration should be adequate. It is sufficient if it is something which the law regards as of value.") (citation omitted). I believe that there is consideration here for the full $33,000 loan. But, because there is consideration with a value of at least $1,000, the 1996 agreement is supported by consideration.

In addition to the loan of $33,000, respondent also provided consideration for the agreement by forbearing from collecting on the loans that appellant personally guaranteed.

A creditor's promise to forbear from calling in a debtor's outstanding loans, whether verbal or implied by the circumstances, can be sufficient consideration to support a guarantee by a third-party guarantor.

*Schrupp*, 375 N.W.2d at 53 (citing *Baker v. Citizens State Bank*, 349 N.W.2d 552, 558 (Minn.1984)). Respondent testified that he would not have foregone calling the notes and that he would not have actually loaned more money to the corporation if appellant had been unwilling to sign an additional guarantee. *See id.* (finding that understanding that bank would forbear from calling in outstanding loans was consideration for third-party guarantee). The majority concludes, however, that the forbearance by respondent for a period of three months is not an adequate period of time for the forbearance to constitute consideration. I disagree.

"The purpose of bargaining for forbearance is to attempt to find a means to pay the outstanding debts." *Baker*, 349 N.W.2d at 559. Respondent forbore for a time during which both he and appellant demonstrated their intent to continue with the purpose of the corporation, to develop and manufacture a product for mixing animal feed. Had the corporation made money, it might have been able to repay the debt. When it became apparent that the corporation would not continue to pursue its purpose, respondent called in the notes. It was clear that the corporation would not make any money; therefore, it would no longer be reasonable or necessary for respondent to continue to forbear.

Both the forbearance and the agreement to lend the corporation more money constitute more than adequate consideration. Therefore, I would affirm the judgment based on the amended findings.